## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT NASHVILLE

FEBRUARY 1997 SESSION

**FILED**

June 26, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9511-CC-00387 |
| | ) | |
| vs. | ) | Sequatchie County |
| | ) | |
| **DALE NOLAN,** | ) | Honorable Buddy D. Perry, Judge |
| | ) | |
| Appellant. | ) | (Assault, Aggravated |
| | ) |  Assault, Attempted 2d Degree |
| | ) | Murder, Kidnapping) |

FOR THE APPELLANT:

PHILIP A. CONDRA
District Public Defender

B. JEFFERY HARMON
Assistant District Public Defender
P.O. Box 220
204 Betsy Pack Drive
Jasper, TN  37347

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MERRILYN FEIRMAN
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

JAMES MICHAEL TAYLOR
District Attorney General

JAMES W. POPE, III
Asst. District Attorney
265 Third Ave., Ste. 300
Dayton, TN  37321

OPINION FILED: _____

**AFFIRMED - ATTEMPT TO COMMIT SECOND DEGREE MURDER;
         KIDNAPPING; ASSAULT**
**REVERSED AND DISMISSED - AGGRAVATED ASSAULT**

CURWOOD WITT
JUDGE

## OPINION

The appellant, Dale Nolan, was convicted by the Circuit Court of Sequatchie County of assault, aggravated assault, attempted second degree murder and kidnapping. The court imposed sentences of 11 months, 29 days for the  assault, 4 years for the reckless aggravated assault, and 9 years for the attempted second degree murder, all to run concurrently. The court also imposed a 6-year sentence for the kidnapping conviction to be served consecutively to the attempted second degree murder sentence. The appellant is before this court on his direct appeal, and he has raised numerous issues for our consideration relating to the sufficiency of the evidence, jury instructions and verdict form, the applicability of the insanity defense, the constitutional rights of a unanimous verdict and protection against double jeopardy, the court's role as the thirteenth juror, and sentencing. Upon our review, we affirm the convictions and sentences in all cases except the aggravated assault. This latter conviction is reversed, and the indictment is dismissed, an action that the state concedes is appropriate.

On December 28, 1993, the appellant lived in a house trailer with his wife, Christine Nolan, and his 15 year old daughter, Tina Nolan, in Sequatchie County. During the day, the appellant attended a medical appointment with a neurologist who treated him for epilepsy and a licensed professional counselor who provided mental health treatment. Christine Nolan accompanied the appellant to these appointments.

After returning home in the afternoon, the appellant visited with a neighbor, and he returned to his home upset and crying. By all accounts, he had not been upset earlier in the day. The appellant left his home for a few hours and returned wanting to go to church, which he and his wife did that evening. Mrs. Nolan testified that her husband told her during their trip to church that his cigarettes

4

tasted strange and he wanted to get fresh ones. He also remarked that something was wrong because there were cars with out-of-state license tags at the store where they stopped to purchase cigarettes.

After returning home from church, the appellant went to a fresh water spring to get water because he did not think the tap water at his trailer tasted as it should. Christine Nolan went to bed while the appellant was out to get water. Sometime after the appellant returned to his home, he awoke his wife and told her she must get up because the world was coming to an end. He told her God had put him "in charge." Mrs. Nolan observed that the appellant was very upset. During these events, the appellant squatted on the floor and beat his fist in a circle.

The appellant and Mrs. Nolan went into the living room, where the appellant retrieved a gun from under the couch. The appellant also made statements that he was God and God had put him in charge, and he smacked his own face. Mrs. Nolan testified that the appellant had a "wild look" on his face and his expression was not normal.

The appellant took the gun, pointed it under his wife's breast, and pulled the trigger. It clicked and did not fire. The appellant then pointed and fired at the television set, blowing a hole through it. Mr. Nolan began demanding that his wife get Joe May, the Sequatchie County Sheriff, on the phone. He continued to profess to be God. He also stated he was going to shoot Satan and put Satan back in Hell where he belonged. Mrs. Nolan interpreted the appellant's comments about Satan as referring to Sheriff May.

At approximately 1:30 a.m., Officer Loyd Grant of the Dunlap Police Department responded to a complaint of a family disturbance at the Nolan

1

residence. When he arrived, he parked his patrol car in the driveway and walked to the porch. He testified it was dark and foggy, and he had difficulty seeing. He was able to determine that Dale Nolan, whom he knew, and a woman he did not know were on the porch. The appellant indicated that he wanted to see the sheriff. Mr. Nolan was holding the gun, although Officer Grant did not see it until Mr. Nolan poked him in the chest with it. The appellant shoved Officer Grant three times with the gun, and the third time Officer Grant shoved the appellant back by the barrel of the gun. As the appellant was falling backwards, the Nolans' dog bit Officer Grant, and the gun fired. The bullet hit Officer Grant between his first finger and thumb, split another finger, and caused other minor injuries to his leg. Officer Grant testified he did not know how the gun discharged, only that it went off as the appellant was going backwards. Officer Grant then went around the trailer, and he encountered Sheriff's Deputy Dustin Mitchell, who had responded to the scene along with Deputy Mike Stephens as backup.

Mitchell, who at the time of the trial was employed as a police officer with the City of Dunlap, testified he was not in uniform because he was not scheduled to work that evening. He had been at the jail when a complaint call came in and had accompanied Deputy Stephens to the Nolan trailer at Stephens' request. He testified Deputy Stephens was in uniform, and they arrived at the Nolan residence in a marked patrol car. Officer Mitchell recalled seeing two men struggling on the porch when he arrived. He jumped out of the car and ran to approximately ten yards from the porch, at which point he recalled seeing the appellant jerk away from Officer Grant, step back and shoot the gun he had pointed at Grant. Officer Mitchell testified that the appellant immediately turned and shot in his direction, and he heard a sound like a mosquito whizzing by him.

Officer Stephens testified he was standing about 2 car lengths or 15

**2**

feet from the end of the trailer when he heard the first shot fired. He looked up, and it appeared that the appellant shot again, this time at Mitchell. Although Stephens could not see the weapon itself, he saw the muzzle flash.

The appellant retreated to his trailer, where his wife had already returned during the preceding events. Tina Nolan and her 16-year-old friend, Nancy Smith, were also in the trailer in Tina's bedroom. During the evening, Miss Smith heard the appellant crying and saying the world was ending. She also heard gunshots and observed the hole in the television and the walls. Miss Smith heard the appellant making statements that he was God and that he wanted to shoot Sheriff May. The appellant also made statements that Miss Smith's father, whom the appellant had never met, had the deed to the Nolan trailer. At various times throughout the night, the appellant went into Tina's bedroom with the gun to check on Tina and Nancy, and at other times, he had the girls come into the living room. The appellant demanded that Miss Smith call her father, which she attempted to do. He also had Tina call the police to have Joe May come to the house. Miss Smith testified that although the appellant never told her she could not leave the trailer, she was afraid to do so and feared the appellant was going to shoot her. She further testified that although her intention had been to spend the night at the Nolan residence, she no longer wanted to stay there after she became fearful of the appellant.

In addition to these events, Mrs. Nolan testified that throughout the night her husband was upset about a deed, which she did not understand. At one point, she told him he was not God, he was Dale Nolan, to which he responded, "Who's Dale Nolan?" Mrs. Nolan also testified her husband was normally good with the family cat and dog, although that night he kicked the dog and aimed the gun at the cat. The appellant also turned lights off and on in the house and removed

drawers, set them on the cabinet, and acted like he was taking items from them.

Additional law enforcement officers responded to the scene, including a SWAT team from Chattanooga. The appellant and the officers communicated by telephone and by yelling back and forth at the scene. Around daybreak, Mrs. Nolan was able to escape while the appellant was on his knees praying. Tina Nolan and Nancy Smith escaped the house later in the morning when the appellant set the gun down momentarily.

Shortly thereafter, Mr. Nolan was disarmed and taken into custody. By this time, the media had arrived, and as Mr. Nolan was taken away, he looked into the cameras and made statements about God and the Devil and that he owned everything. He was placed in Officer Stephens' patrol car. While in the car, the appellant stuck his head through the glass cage separating the front and back of the car and bit Officer Mitchell on the shoulder.

Sheriff May ordered Deputy Coy Swanger to transport the appellant directly to Joe Johnson Mental Health Center. Deputy Clyde Johnson accompanied Deputy Swanger to the mental health center. Once there, the staff requested that the appellant be taken to Erlanger Hospital for collection of blood and urine samples. Deputy Swanger testified that the appellant became very violent while giving the urine sample, and after an Erlanger security guard assisted in obtaining the sample, it took Deputies Swanger and Johnson and two Erlanger security guards to get him back into the patrol car. Deputy Swanger testified the appellant calmed down after he was in the car; however, during the return trip to the mental health center he again became violent and kicked out one of the back windows of the patrol car. Despite Deputy Swanger's efforts to throw the appellant off balance by swerving back and forth, the appellant proceeded to crawl out the opening while

4

the car was traveling 30 to 40 miles per hour. The deputies fought to restrain the appellant, who was very violent, and were able to do so after a protracted struggle and numerous Chattanooga police officers responded.

The appellant was indicted for kidnapping Nancy Smith, attempt of first degree murder of Loyd Grant, attempt of first degree murder of Dusty Mitchell,[1] and assault on an officer, Dustin Mitchell.

Shortly after the appellant was taken into custody, he was sent to the Middle Tennessee Mental Health Institute ("Institute") for a forensic evaluation.[2] A second forensic evaluation was ordered with the Institute in November 1994, following an out-patient evaluation at Joe Johnson Mental Health Center in October 1994 and the appellant's notice of intent to rely on the insanity defense of Tennessee Code Annotated section 39-11-501.

At trial, the state presented the expert testimony of Rokeya Farooque, a psychiatrist who evaluated the appellant during both of his admissions at the Institute. Doctor Farooque testified that the Institute utilizes a "team" approach to forensic evaluations, whereby the psychiatrist, psychologists, social workers and nurses work together to determine whether the patient is competent to stand trial, whether the patient meets the criteria for the insanity defense, and whether the patient is committable. Doctor Farooque testified that she disagreed with the previous diagnoses of paranoid schizophrenia, atypical psychosis and delusional

---

[1]Dusty Mitchell and Dustin Mitchell appear to be the same individual.

[2]Although the court's order is not in the record on appeal, the Institute's report indicates the evaluation was ordered by the General Sessions Court pursuant to Code section 33-7-301(a). This Code provision deals in relevant part with mental health care for purposes of "evaluation and treatment as it relates to competency to stand trial." See Tenn. Code Ann. § 33-7-301(a) (Supp. 1996).

5

disorder which had been given to the appellant by other mental health professionals. She testified the appellant initially made some complaints that his food did not taste right and of hearing spirits' voices speaking to him, but the only psychiatric diagnosis she found appropriate was cannabis (marijuana) abuse. The doctor's evaluation included a history of severe post-initial-effect violent reactions to marijuana[3] and a long history of marijuana use. Moreover, Dr. Farooque testified the appellant admitted marijuana use on the date of the incident,[4] and in her opinion, his actions were the result of marijuana consumption. She opined that the appellant was competent to stand trial, not an appropriate candidate for the insanity defense and not committable.

The appellant's expert witnesses were Bob Fairweather, a licensed professional counselor who treated the appellant at Sequatchie County Mental Health Center,[5] and Duncan Cater, a psychiatrist specializing in addiction medicine, who treated the appellant at Joe Johnson Mental Health Center. Mr. Fairweather testified that his license allows him to make psychological diagnoses, although his employer requires that all diagnoses made by licensed professional counselors must be confirmed by a medical doctor. In the appellant's case, he was unsure of the appellant's diagnosis, and referred the matter to a medical doctor, who diagnosed paranoid schizophrenia. Doctor Cater testified he saw the appellant on January 13, 1993 and made a dual diagnosis of paranoid schizophrenia and seizure disorder, cause unknown. This doctor testified he had not seen the appellant since June 1994, had "no idea" whether the appellant was suffering from paranoid

---

[3]The doctor admitted this history may have been taken from Mrs. Nolan, rather than the appellant.

[4]Test results were stipulated into evidence which are consistent with the presence of marijuana in the appellant's body on the date in question.

[5]Sequatchie County Mental Health Center is part of Joe Johnson Mental Health Center.

schizophrenia on December 29, 1993, and had no idea whether the appellant met the criteria for the insanity defense on that date. Doctor Cater found the videotape taken of the appellant at the scene consistent with "very psychotic" behavior.

The appellant was tried before a jury of his peers in Sequatchie County Criminal Court on February 23 and 24, 1995. Following the jury's verdict, the appellant filed a motion for new trial, which was denied after hearing on July 26, 1996. The appellant then perfected his appeal to this court.

I

The first issue before us is whether the evidence is sufficient to support the convictions.[6] When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 250, 253

---

[6]In separate issues, the appellant has challenged the trial court's failure to rule as a matter of the law that the defendant was insane at the time of the offenses and whether the state proved sanity beyond a reasonable doubt. We view the latter as a sufficiency of the evidence question and as potentially dispositive of the former. These issues are discussed at section III, infra.

(Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 833, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856,859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The appellant was tried and convicted by a jury. A guilty verdict from the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Hatchett, 560 S.W.2d 627, 639 (Tenn. 1978). Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of demonstrating why the evidence is insufficient, as a matter of law, to support the verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its brief, the state concedes the evidence was insufficient to support the jury's verdict of reckless aggravated assault of Dustin Mitchell. The state's concession is based upon the lack of bodily injury to Officer Mitchell. See Tenn. Code Ann. §§ 39-13-101 (1991), 39-13-102(1) (1991) (requiring either serious bodily injury or use or display of a deadly weapon). We agree that the conviction was improper; however, our reasoning somewhat differs from the state's.

An offense is generally considered to be a lesser included offense of

**8**

a charged offense if the elements of the included offense consist of some, but not all, of the elements of the charged offense and if commission of the greater offense does not occur without commission of the lesser offense. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996). Moreover, lesser included offenses are distinguished from lesser grade offenses, the latter being established by statute. Trusty, 919 S.W.2d at 310-11. The indictment that resulted in the aggravated assault conviction provided:

> [T]hat Dale Nolan on the 29th day of December, 1993, in Sequatchie County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally, deliberately and with premeditation attempt to kill one Loyd Grant, in violation of T.C.A. 39-12-101, and T.C.A. 39-13-202, and all of which is against the peace and dignity of the State of Tennessee. (emphasis added)[7]

Aggravated assault is an assault[8] resulting in serious bodily injury or accomplished through the use or display of a weapon. Tenn. Code Ann. § 39-13-102(a)(1) (1991). The language of the indictments here in question alleges neither serious bodily injury nor use or display of a weapon. The language of the indictment now before us is similar to the language of the indictment charging attempt to commit first-degree murder in Trusty, supra, leading us to the conclusion, compelled by Trusty, that under such an indictment, aggravated assault is not a lesser included offense of attempted murder in the first degree. See Trusty, 919 S.W.2d at 312-313. Neither is the aggravated assault a lesser grade of attempt to commit murder in the first degree. Trusty, 919 S.W.2d at 312. Accordingly, the "conviction for an

---

[7]The trial court entered a judgment of acquittal on the attempted first degree murder charges and submitted attempted second degree murder, aggravated assault, reckless aggravated assault, reckless endangerment and assault on the indictments recited above.

[8]An assault is committed by one who intentionally, knowingly or recklessly causes bodily injury to another, intentionally or knowingly places another in reasonable fear of bodily injury, or intentionally or knowingly causes extremely offensive or provocative physical contact to another. Tenn. Code Ann. § 39-13-101 (1991).

unindicted offense that is not a lesser degree of the offense charged or a lesser included offense may not stand." Trusty, 919 S.W.2d at 307; State v. Lampkin, 619 S.W.2d 520 (Tenn. 1981); McLean v. State, 527 S.W.2d 76 (Tenn. 1975). Thus, we agree with the state that the appellant's conviction of reckless aggravated assault was improper, although we do not arrive at this result as a sufficiency-of-the-evidence determination.

On the other hand, the appellant's brief raises the issue of sufficiency of the evidence in the other three convictions, but in the argument on the issue he concedes that the evidence was sufficient as to the simple assault conviction. Again, we agree. The assault conviction was proper.

With respect to the first of the remaining two convictions, attempted second degree murder, the appellant asserts the evidence is insufficient because there was no showing the appellant attempted a "knowing killing of another." See Tenn. Code Ann. § 39-13-210(a)(1) (1991) (emphasis added). The Code defines this mental state:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b) (1991).

The appellant bases this sufficiency challenge on the testimony of Officer Grant, the victim of the attempted second degree murder, and the appellant's wife. According to the appellant's logic, we should find the evidence insufficient because Officer Grant and Mrs. Nolan did not know how the gun discharged and testified the appellant was falling backwards when the gun fired. What the appellant does not address, and what we find compelling, is the testimony of Officer Mitchell that the appellant stepped back, pointed the rifle at Officer Grant and fired. In the light most

favorable to the state, this evidence sufficiently supports a verdict of attempted second degree murder, and specifically, the "knowing" element of the crime.

Additionally, the appellant contends the state failed to present sufficient evidence of malice. Prior to the 1989 revisions to the Code, second degree murder was the malicious killing of another. State v. Tracy Lamar Belle, No. 03C01-9503-CR-00094, slip op. at 3 (Tenn. Crim. App., Knoxville, Mar. 6, 1996), perm. app. denied (Tenn. 1996); see generally Tenn. Code Ann. § 39-2-211 (Supp. 1988) (amended 1989, 1995). However, the offense here in question was committed after the 1989 revisions to the criminal code, under which the relevant definition of second degree murder is an unlawful, knowing killing. See Tenn. Code Ann. § 39-13-210 (Supp. 1996) (also defining second degree murder as a reckless killing related to the distribution of certain scheduled drugs). Malice is not intrinsically required to sustain a conviction, although it may be inherent in some second degree murders. Tracy Lamar Belle, slip op. at 3 (Tenn. Crim. App., Knoxville, Mar. 6, 1996) (citation omitted). It can likewise be said that attempted second degree murder has no malice requirement. See Tenn. Code Ann. § 39-12-101(a)(2) (1991).

Thus, the appellant's sufficiency challenge to the attempted second degree murder conviction is without merit.

Finally, the appellant maintains that the evidence is insufficient to support his conviction of kidnapping of Nancy Smith. He argues there was insufficient evidence of unlawful confinement of Miss Smith. Unlawful confinement is defined as confinement "accomplished by force, threat or fraud." Tenn. Code. Ann. § 39-13-301(2) (1991). The appellant contends the state made an insufficient showing because prior to the events which form the basis for the appellant's

**11**

convictions, Miss Smith intended to spend the night at the Nolan residence, the appellant never pointed a gun at her, the appellant never told her she could not leave, and in fact, told her she could leave and that she merely waited for a good opportunity to do so. Despite the appellant's resourceful arguments, we are unpersuaded. The evidence, in the light most favorable to the state, includes the testimony of Miss Smith that she wanted to leave the Nolan residence once the shooting began. From these facts, a jury could have reasonably inferred the defendant's guilt. As a result, we hold that the evidence is sufficient to support the appellant's conviction of kidnapping of Nancy Smith. Moreover, we reject the appellant's arguments of no unlawful confinement because he never pointed a gun at Miss Smith or told her she could not leave. Neither of these facts is necessary under the statutory definition of the crime. See Tenn. Code Ann. §§ 39-13-301(2), 39-13-302, 39-13-304 (1991). Accordingly, the evidence sufficiently supports the appellant's conviction of kidnapping.

## II

Next, the appellant challenges three issues pertaining to the jury instructions and the verdict form. He contests the trial judge's (1) refusal to charge the jury on attempt to commit manslaughter and failure to instruct the jury on attempt to commit criminally negligent homicide as lesser degrees of attempt to commit second degree murder, (2) charge of aggravated assault as a lesser included offense of attempt to commit second degree murder, and (3) failure to provide the jury a verdict form in conformity with Tennessee Pattern Instruction - Criminal 43.10, "Verdict Form: Not Guilty by Reason of Insanity." We address each of these issues in order.

**12**

We preface our discussion of issues (1) and (2) with recognition of the distinction between lesser grades or degrees of charged offenses and lesser included offenses. As recently explained by our supreme court in Trusty, supra, our statutory scheme sets forth the classes or grades of crimes. See, e.g., Tenn. Code Ann. §§ 39-13-201 through 39-13-213 (1991 and Supp. 1996) (degrees of criminal homicide include first-degree murder, second-degree murder, voluntary manslaughter and criminally negligent homicide). The trial court has an obligation to instruct the jury on the charged crime as well as the lesser degrees of the offense where the evidence could support a conviction of the lesser offense. Tenn. Code Ann. § 40-18-110(a) (1990); Trusty, 919 S.W.2d at 310.

On the other hand, lesser included offenses are offenses "necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." Tenn. R. Crim. P. 31(c). An offense is generally considered to be a lesser included offense "only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense." Trusty, 919 S.W.2d at 310 (citing Schmuck v. United States, 489 U.S. 705, 716, 109 S. Ct. 1443, 1450-51 (1989)). In Tennessee, the elements of the greater, indicted offense must include, but not be congruent with, all the elements of the lesser offense. Trusty, 919 S.W.2d at 310-11 (citing Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979)). A defendant is entitled to have the jury instructed on a lesser included offense where the evidence would support an inference of guilt of the lesser included offense. Trusty, 919 S.W.2d at 310.

With that background, we turn to the issue relating to the trial court's failure to instruct the jury on attempted voluntary manslaughter. The legislature has classified voluntary manslaughter as a lesser degree of second degree murder.

**13**

See Tenn. Code Ann. §§ 39-13-201, 210 and 211 (1991).  Thus, instructions on this offense should have been given if the evidence would support a finding of guilt thereon.  Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."  Tenn. Code Ann. § 39-13-211(a) (1991).  The appellant's brief addresses only the passion prong of the elements, alleging, "The [appellant] was repeatedly referred to [in the evidence] as being upset . . ., crying or sobbing, . . . [and] acting or looking wild."  In contrast, the state's brief concedes there is evidence that the appellant's behavior was irrational, and argues instead there is an absence of evidence of adequate provocation to lead a reasonable person to act irrationally.  After carefully reviewing the record, we agree with the state.  Adequate provocation and passion have a cause-and-effect relationship in the definition of voluntary manslaughter.  In other words, the provocation must beget the passion.  In the case at bar, we find no evidence of any provocation of the appellant which brought about his irrational behavior.  At most, the evidence shows Officer Grant, in uniform and standing within a few feet of the appellant in a dimly-lit, foggy area, tried to take the appellant's gun from him while the appellant was "holding it up."  We find no evidence of provocation in these facts.  Accord Love v. Bass, 145 Tenn. 522, 528-29, 238 S.W. 94, 96 (1921) (attempt to effectuate lawful arrest does not give rise to passion element of murder).  Accordingly, we find no error in the trial court's failure to instruct the jury on attempted voluntary manslaughter.

Next, we turn to the appellant's contention the judge should have instructed the jury on attempted criminally negligent homicide. The appellant neither requested an instruction on criminally negligent homicide at trial nor raised the trial court's failure to give the instruction in the motion for a new trial.  Accordingly, the appellant has waived appellate consideration of this issue.  Tenn. R. App. P. 3(e)

**14**

("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(a) (appellate court is not required to grant relief to party responsible for error or who failed to take action to prevent or nullify its harmful effect); see also State v. Christopher Clay Kennedy, No. 01C01-9601-CC-00038, slip op. at 6 (Tenn. Crim. App., Nashville, Mar. 27, 1997) (appellant who neither objected to jury instructions nor requested additional charge waived issue on appeal).

Although the appellant has failed to preserve this issue for appeal, we take this opportunity to discuss it because of its significance. We believe the crime of attempted criminally negligent homicide is not viable in Tennessee based upon the supreme court's recent pronouncement in State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996). In Kimbrough, the supreme court was faced with a challenge to the validity of the crime of attempted felony murder. The court held that the crime does not exist in Tennessee, reasoning that a criminal attempt requires intent, while the crime of felony murder requires only recklessness. Thus, attempted felony murder would require an actor to intend to commit an unintentional act. Kimbrough, 924 S.W.2d at 892. The court's analysis included citation to People v. Hernandez, 614 P.2d 900, 901 (Colo. Ct. App. 1980), for the proposition the "offense of 'attempted criminally negligent homicide' does not exist." Kimbrough, 924 S.W.2d at 891. The court also cited Hull v. State, 553 S.W.2d 90, 94 (Tenn. Crim App.), cert. denied (Tenn. 1977), in which this court said there was no crime of attempted involuntary manslaughter, as such a crime "would require proof that one intended a result that accidentally occurred." Kimbrough, 924 S.W.2d at 891. Significantly, involuntary manslaughter is the legal predecessor of criminally negligent homicide in Tennessee law. Tenn. Code Ann. § 39-13-212, Sentencing Comm'n Comments

**15**

(1991). But see Trusty, 919 S.W.2d 305 (in case prior to Kimbrough, supreme court said that a defendant indicted for attempted first degree murder "could well have [been] convicted of attempted criminally negligent homicide"). Consequently, we believe the crime of attempted criminally negligent homicide does not exist in this state.[9]

---

[9]We are mindful of the question Kimbrough raises regarding the viability of crimes which consist of a criminal attempt of an offense requiring a knowing mental state. See, e.g. State v. Fabien Eldridge, No. 01C01-9504-CC-00106, slip op. at 5-7 (Tenn. Crim. App., Nashville, May 7, 1997) (attempted second degree murder); State v. Cecil Skidmore, No. 03C01-9502-CR-00039, slip op. at 9, n.7 (Tenn. Crim. App., Knoxville, Apr. 24, 1997) (attempted voluntary manslaughter); State v. John Guinn, No. 02A01-9607-CV-00152, slip op. at 4-5 (Tenn. Ct. App., Jackson, Jan. 17, 1997) (attempted second degree murder). Although Kimbrough addresses criminal attempts of crimes which require a reckless or criminally negligent mental state, it does not specifically address the viability of attempts of the more culpable "knowing" crimes. Kimbrough, 924 S.W.2d at 890-91.

Attempted second degree murder may be proven by a showing the defendant "intentionally acted with the requisite culpability to commit the offense of murder in the second degree" and the defendant "could have been convicted of murder in the second degree . . . if he had actually killed the victims." State v. John L. Smith, No. 01C01-9309-CR-00308 (Tenn. Crim. App., Nashville, Oct. 20, 1994); see also State v. Edward Thompson, No. 03C01-9503-CR-00060 (Tenn. Crim. App., Knoxville, Dec. 12, 1996); State v. Timothy Jenkins, No. 01C01-9508-CC-00269 (Tenn. Crim. App., Nashville, Nov. 15, 1996). We see no inherent conflict within that definition.

Additionally, we note the difference between the mental states of intentional and knowing, as distinguished from reckless and criminally negligent. The former two involve a level of conscious awareness and volitional, affirmative conduct, whereas the latter two contemplate a disregard of the situation and unintentional (or at least irresponsible) conduct or failure to act.

Finally, we believe the overall structure of the criminal code dictates this result. Crimes which, if completed, would amount to criminally negligent homicide or vehicular homicide, i.e. those which require a mental state less culpable than "knowing," but which fail as a substantive offense under the homicide statute because the victim does not die, are nevertheless punishable as assaultive offenses. Tenn. Code Ann. § 39-13-103 (reckless endangerment) (1991); Tenn. Code Ann. § 39-13-106 (vehicular assault) (1991); accord Model Penal Code § 5.01 commentary at 303-04 (1985) (Model Penal Code creates separate offenses for recklessly placing another person in danger of death, rather than applying the law of attempt to reckless and negligent homicide offenses). In contrast, the crime of murder in the second degree is often found as a lesser offense of murder in the first degree where there has been a failure of proof of premeditation or deliberation, the distinguishing elements of first degree murder. Although the crimes of assault and aggravated assault could, in some cases, be found on facts which would otherwise constitute attempted second degree murder, this is not always the case. For

The next issue presented is whether the trial court committed error in charging the jury on the crime of aggravated assault as a lesser included offense of attempt to commit second degree murder, an instruction that was given in both attempted homicide cases. It is unnecessary for us to address the issue with respect to the indictment alleging attempted homicide of Dusty Mitchell. We have determined that the aggravated assault conviction resulting from that indictment is reversed. As to the attempted homicide of Loyd Grant, we agree with the appellant that such instruction should not have been given, under the authority of Trusty, 919 S.W.2d 305. However, the appellant was convicted of a more serious offense, the Class B felony of attempt to commit second degree murder, and we see no prejudice to the appellant from the court's improperly charging the jury as to the possibility of a verdict being returned on aggravated assault, a Class C felony, nor has the appellant claimed or shown any such prejudice. We conclude that any error of the trial court is harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). We are aware that the appellant claims that the trial court was without jurisdiction to try the appellant for aggravated assault. Had he been convicted of aggravated assault under the attempted homicide indictment, the validity of the judgment may well have been in doubt under Trusty, but the appellant was not convicted of aggravated assault. The issue is without merit.

Finally, the appellant challenges the trial court's failure to supply the

---

example, an attempt in which the intended victim is unaware of the threat of imminent bodily injury and sustains no bodily injury could not support an assault conviction. See Tenn. Code Ann. § 39-13-101(a) (1991). Thus, the criminal code does not provide an all-encompassing alternative to attempted second degree murder. We believe the code contemplates the use of the criminal attempt statute with the second degree murder statute in factually appropriate circumstances. To hold otherwise would, in some cases, allow the defendant who has been indicted for attempted first degree murder, but for whom proof of premeditation fails, to escape criminal responsibility altogether. It is beyond our comprehension that this result was contemplated by the legislature in enacting the criminal code or the supreme court in its Kimbrough decision.

jury with a verdict sheet on which to report a verdict of not guilty by reason of insanity. The verdict form used has the choices "guilty" and "not guilty" for each offense, but has no designation of "not guilty by reason of insanity." The trial judge, however, instructed the jury on the requisites of the insanity defense, and on the request of defense counsel, he instructed the jury to write in a verdict of "not guilty by reason of insanity" if they so found on any of the offenses. Nevertheless, the appellant contends that Code section 40-18-117, requiring the trial judge to charge the jury that a verdict of not guilty by reason of insanity shall be explicitly stated, coupled with Tennessee Pattern Instruction - Criminal 43.07, stating that the jury "will be provided with forms for all possible verdicts in this case," mandates that the jury should have been given the pattern verdict form upon which to report a verdict of insanity. See generally Tenn. Patt. Instr. - Crim. 43.10 (verdict form - not guilty by reason of insanity). The state counters this argument by pointing out the appellant's failure to object to this purported defect either at trial or in the Motion for a New Trial. Moreover, the state contends, error should not be found because the trial judge properly instructed the jury on the insanity defense.

It is well-established law in Tennessee that a party must object to errors or omissions in jury instructions at trial or in a motion for new trial in order to complain of the issue on appeal. See, e.g., Tenn. R. App. P. 3(e); State v. Lisa Brewer, No. 01C01-9502-CC-00042, slip op. at 7 (Tenn. Crim. App., Nashville, Aug. 4, 1995); State v. Keel, 882 S.W.2d 410, 417-18 (Tenn. Crim. App. 1994). We believe this rule applies to the submission of a verdict form, as well. Cf. Christopher Clay Kennedy, slip op. at 6 (appellant waived objection to trial judge having written in amount for potential fine assessment on verdict form prior to its submission to jury by failing to object in the trial court); Keith v. Murfreesboro Livestock Market, 780 S.W.2d 751, 758-59 (Tenn. App. 1989) (in context of civil litigation, failure to object to verdict form in trial court amounts to waiver of objection) (citations

**18**

omitted).  The appellant failed to object when he had the opportunity to do so, and his chance to raise this issue has been waived.

Moreover, this is not a case of plain error which requires our intervention despite the appellant's waiver of this issue.  The trial judge gave a thorough instruction on the insanity defense.  He pointed out to the jurors during the charge that they should write in a "not guilty by reason of insanity" verdict on the form if that was their finding, and he reiterated this directive at the appellant's request at the conclusion of the charge to insure the jurors understood this instruction applied to all four counts of the indictment submitted for their determination.  Additionally, there is no requirement that the pattern instructions be used. State v. West, 844 S.W.2d 144, 151 (Tenn. 1992).  Thus, there was no error per se when the trial judge did not submit the pattern form to the jury.  Furthermore, there is nothing in the record or the parties' briefs which causes us to doubt that the jury had the benefit of the court's full written instructions on the insanity defense in the jury room with them during their deliberations.[10]  See Tenn. R. Crim. P. 30(c) (requiring every word of the judge's instructions to be given to the jury in writing and taken into the jury room when the jury retires for its deliberations).  In light of these facts, it would be inappropriate for us to address this issue as plain error.

### III

The appellant's next issues pertain to the insanity defense upon which he unsuccessfully relied at trial.  He contends the trial court committed error in failing to rule as a matter of law that he was insane at the time of the commission

---

[10]Although the Technical Record does not contain these written instructions, we have been provided with a transcribed version of the judge's charge, including the comments of counsel made at the time of the charge.

of the offenses.[11] He further contends the state failed to prove beyond a reasonable doubt that he was not insane at the time of the offenses. We view the latter question as an issue of sufficiency of the evidence and review it as such. Moreover, because the latter issue, if answered in favor of the state, would render moot consideration of the former question, we consider the latter first.

The defense of insanity applies where, "at the time of such conduct [giving rise to the offense], as a result of mental disease or defect, the person lacked substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform that conduct to the requirements of the law." Tenn. Code Ann. § 39-11-501(a) (1991) (amended 1995); Graham v. State, 547 S.W.2d 531, 543-44 (Tenn. 1977). In a criminal prosecution, sanity is presumed. Brooks v. State, 489 S.W.2d 70, 72 (Tenn. Crim. App. 1972). If, however, the evidence raises a reasonable doubt as to the sanity of the defendant, the state assumes a burden of proof beyond a reasonable doubt of the defendant's sanity. Collins v. State, 506 S.W.2d 179, 184 (Tenn. Crim. App. 1973); Covey v. State, 504 S.W.2d 387, 391 (Tenn. Crim. App. 1973). Additionally, if the defendant's alleged mental disease is one which is subject to remission, the defendant must make a prima facie showing of non-remission before the state assumes the burden of proving sanity. Forbes v. State, 559 S.W.2d 318, 325 (Tenn. 1977). Once the burden has been properly shifted to the state, sanity becomes an essential element of the crime. State v. Clayton, 656 S.W.2d 344, 346 (Tenn. 1983).

To overcome its burden of proof, the state must demonstrate either

---

[11]The exact wording of the appellant's issue reads, "Did the Court err in failing to rule as a matter of law that the Defendant was _not_ insane at the time of the commission of the offenses charged?" (emphasis added) It is apparent from the appellant's argument, however, that the word "not" should be omitted from the issue.

(1) the defendant was not "suffering from a mental illness at the time of the commission of the crime," or (2) the mental illness or defect neither prevented him from knowing the wrongfulness of his act nor rendered him "substantially incapable of conforming his conduct to the requirements of the law he is charged with violating." Clayton, 656 S.W.2d at 351. In the event the state fails to present evidence addressing an essential element of the insanity test, any conviction obtained violates due process and must be reversed. Clayton, 656 S.W.2d at 352 (citation omitted).

As discussed in detail elsewhere in this opinion, a review of the sufficiency of the evidence entails a determination of whether, upon consideration of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[12] As that analysis is applied to the insanity defense, once the defendant has produced some evidence amounting to reasonable doubt of his sanity, the state may overcome its burden of proving the defendant's sanity beyond a reasonable doubt in one of three ways. First, the state may introduce expert opinion testimony on the issue of sanity. Edwards v. State, 540 S.W.2d 641, 646 (Tenn. 1976). Second, the state may establish the defendant's sanity through lay opinion testimony, once a proper foundation is laid. Edwards, 540 S.W.2d at 646. Finally, the state may show that the acts and statements of the petitioner, at or near the time of the crime, were consistent with sanity and inconsistent with insanity. Edwards, 540 S.W.2d at 646.

The state does not contend on appeal that the defendant made an inadequate prima facie showing of insanity and non-remission. Therefore, we

---

[12]For a complete discussion of the legal standard for review of the sufficiency of the evidence, see supra, section I.

proceed directly to the sufficiency of the state's rebuttal evidence. The state presented the expert testimony of Dr. Farooque, who examined the appellant during two 30-day inpatient admissions at the Middle Tennessee Mental Health Institute and was unable to support any psychological diagnosis, save cannabis intoxication. She specifically opined the appellant did not meet the Graham test for legal insanity. In other words, she found him sane. Having established this, the state satisfied the first evidentiary alternative for proof of legal sanity announced in Edwards.[13] By its verdict, the jury obviously accredited this testimony over the contrary testimony of the lay and expert witnesses who gave contrary testimony. Because the jury so found, and the state's evidence complies with the dictates of Edwards, we are obliged to conclude that the evidence supports a finding by a rational trier of fact of the appellant's sanity beyond a reasonable doubt.

Having found the defendant's sanity sufficiently supported by the evidence of record, we find it unnecessary to address the appellant's related issue pertaining to whether the trial court erred in failing to find the defendant insane as a matter of law.

IV

Next, the appellant argues the jury found him guilty of both attempted

---

[13]Despite this conclusive testimony of the expert witness offered by the state, the appellant would have us hold the evidence was insufficient because the lay witnesses' testimony was consistent with sanity but not inconsistent with insanity. The Edwards rule is phrased in the alternative. Evidence satisfying any one of the three alternatives is sufficient to carry the state's burden. Accord State v. David Paul Martin, No. 03C01-9412-CR-00448, slip op. at 25-26 (Tenn. Crim. App., Knoxville, Oct. 13, 1995) (trial court did not commit prejudicial error in refusing to instruct jury that state's proof "must not only be consistent with sanity, but inconsistent with insanity" where state submitted both lay and expert testimony that defendant satisfied test of legal sanity), perm. app. granted on other grounds (Tenn. Apr. 1, 1996); see generally Edwards, 540 S.W.2d at 646.

second degree murder and reckless aggravated assault of Officer Loyd Grant, thereby violating his right to a unanimous verdict and against double jeopardy. The verdict forms reflect the finding of guilt of attempted second degree murder applied to the victim Loyd Grant, and the finding of guilt of reckless aggravated assault applied to victim Dusty Mitchell. The appellant has included in the record on appeal an affidavit of the jury foreman, in which the foreman avows that the jury thought they were convicting the appellant of the reckless aggravated assault of Grant, not Mitchell. We find, however, that we are not required to address this issue because the state has conceded the impropriety of the reckless aggravated assault conviction.

**V**

The appellant next contends the trial judge failed to fulfill his role as the thirteenth juror. Rule 33(f) of the Rules of Criminal Procedure imposes a mandatory duty on the trial judge to serve as the thirteenth juror in every criminal case. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). Under the Rule, the judge is empowered to grant a new trial if he disagrees with the jury about the weight of the evidence. Tenn. R. Crim. P. 33(f). In fulfilling this role, "Rule 33(f) does not require the trial judge to make an explicit statement on the record. Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." Carter, 896 S.W.2d at 122.

Only if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror may an appellate court reverse the trial court's judgment. Carter, 896 S.W.2d at 122. Otherwise, appellate review is limited to sufficiency of the

**23**

evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). If the reviewing court finds the trial judge has failed to fulfill his or her role as thirteenth juror, the reviewing court must grant a new trial. State v. Moats, 906 S.W.2d 431 (Tenn. 1995).

In the case before us, the appellant contends the trial judge misunderstood his role as the thirteenth juror because he made remarks expressing his dissatisfaction with the jury's verdict, yet he failed to grant a new trial. In support of this argument, the appellant cites the following comments the trial judge made at trial:

> You know, the truth of the matter is, this case should have been indicted as an aggravated assault.
> . . .
> That's where we are and if that had been the right indictment there it would save a lot of trouble.[14]
> . . .
> Well, I'm not going to [enter a directed verdict on attempted first degree murder and attempted second degree murder and charge the jury on aggravated assault alone]. The State of Tennessee has spent a bunch of money at this point and if it needs to be corrected in that fashion we'll let the Court of Appeals do the correcting.

The appellant also challenges these statements made at the sentencing hearing:

> I don't know whether he had the intent or not.[15]
> . . .
> And I will state again the logic in the [consecutive] sentencing is, I hope during this time period you get some help Mr. Nolan.

Likewise, the appellant cites the following statements made at the hearing on the

---

[14]The next sentence is, "Although I think the elements of attempt to commit second [degree murder] are there and I've got to let it go on it, but I think we're in a position of having some really muddy water as far as what's appropriate." The overall discussion pertains to whether aggravated assault is appropriately charged as a lesser included offense of second degree murder.

[15]The trial judge made this statement during his discussion of whether the sentences would be consecutive or concurrent. When read in the context of the entire colloquy, it is apparent the judge was not questioning whether the appellant possessed the requisite mental states for each of the crimes on which the jury found guilt. Rather, he was expressing his uncertainty as to whether Code section 40-35-115(b)(4) required a finding of intentional disregard for human life and readiness to act where risk to human life was high in order to impose consecutive sentencing.

24

motion for new trial:

> I think there's some close question there in regard to the particularly to [sic] whether the offense was second -- attempt to commit second degree murder or not. It's my judgment that it was, but it's sure a close question, and if someone sees it differently, that's not going to upset me, but it's close enough that it probably should be looked at and reviewed.[16]
>
> . . .
>
> Although in this case, Mr. Harmon, I think you've got -- you certainly got a legitimate issue on the attempt to commit second degree murder case. That's a close one there, and maybe it does need to be looked at by someone who's got the time to review the, you know review the record in the calm of a library. It may have a different perspective there. If they do that doesn't particularly move me one way or the other.

On the other hand, the state defends the trial judge's actions, contending the trial judge's statements made at the hearing on motion for new trial are indicative merely of a factually "close call" and not of the trial judge's disagreement or dissatisfaction with the verdict. The state also contends, albeit without citing any supporting authority, that the statements made during the course of the trial and at the sentencing hearing are irrelevant to our inquiry, and we should consider only those statements made when the trial judge was passing on the motion for a new trial.

We agree with the state's position that we may only consider the statements of the trial judge made in passing on the motion for new trial in our review of the trial judge's actions as thirteenth juror. <u>Cumberland Tel. & Tel. Co. v. Smithwick</u>, 112 Tenn. 463, 467-68 (1903) ("[I]f the circuit judge is dissatisfied with the verdict of the jury, it is his duty to set it aside and grant a new trial, and that upon its being made to appear to this court, <u>from statements made by the circuit judge in passing upon the motion for new trial</u>, that he was really not satisfied with the

---

[16]The trial judge was commenting on the sufficiency of the convicting evidence.

25

verdict, it becomes the duty of this court . . . to do what the circuit judge should have done; that is, to grant a new trial . . . .") (emphasis added). But cf. State v. Ernest L. McCormick, No. 01C01-9502-CC-00027, slip op. at 9 (Tenn. Crim. App., Nashville, Oct. 4, 1995) (relying in part on trial court's statement, "I accept the verdict" made at trial after jury's return of guilty verdict as rationale for concluding trial judge did not fail to act as thirteenth juror). Although the Cumberland Telephone rule was announced in the context of civil proceedings, its principles have been relied on by this court and the supreme court in criminal cases. See, e.g., State v. Moats, 906 S.W.2d 431, 433 (Tenn. 1995); State v. Dankworth, 919 S.W.2d 52, 58 (Tenn. Crim. App. 1995). Therefore, we find it instructive on the review to be undertaken in the case at bar.

Upon consideration of the trial court's entire colloquy on the motion for new trial, including the excerpted portions relied on by the appellant, we are of the opinion the trial court weighed the evidence and concurred with the jury's verdict, thereby fulfilling his role as thirteenth juror. Having found the trial judge fulfilled this duty, we would be in error in revisiting the issue and decline to do so.[17]

## VI

In his final series of arguments, the appellant challenges the propriety of the sentences imposed on him by the trial court. He insists (1) the trial court improperly refused to consider alternative sentencing; (2) the trial court failed to consider relevant mitigating factors; (3) the trial court improperly considered the appellant's alleged prior convictions without certified copies evidencing their authenticity; (4) the trial court afforded too much weight to the appellant's criminal

---

[17]We are, however, permitted to review the sufficiency of the evidence, which is discussed in section I above.

history; (5) the trial court improperly enhanced the kidnapping sentence; and (6) the trial court committed error in imposing consecutive sentences.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a _de novo_ review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our _de novo_ review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1990); State v. Ashby, 823 S.W.2d at 168. Moreover, the burden of demonstrating that the sentence is improper is on the appellant. Ashby, 823 S.W.2d at 169.

Our review of the record leads us to conclude that the trial judge's sentencing determinations should be afforded a presumption of correctness in that his statements on the record evidence his consideration of the sentencing principles and the relevant facts and circumstances. Thus, our _de novo_ review is accompanied by this presumption.

A.    **Enhancement Factors**

The appellant challenges the trial court's consideration of two enhancement factors. First, the appellant takes issue with the court's consideration of his prior convictions without certified copies evidencing their authenticity and the weight

**27**

given the appellant's criminal history. Second, the appellant contends the trial court should not have enhanced the kidnapping sentence based on the appellant's use of a firearm during the commission of that offense.

The appellant's criminal history was detailed in the Presentence Report. The report contains a certified copy of an escape conviction from 1975, an admission by the appellant that he was convicted of possession of marijuana, pending charges for reckless driving and driving on a revoked license (those events were alleged to have occurred a few days prior to the offenses that are the subject of this appeal), and uncertified complaints and warrants from 1989 and 1993 for destruction of property and two counts of aggravated assault of an officer. The report also listed several additional charges on which the appellant was arrested "that did not have verifiable dispositions or were dismissed." At the sentencing hearing, the appellant did not challenge the accuracy of the information in the Presentence Report, other than that the account of the present crimes "was leaning heavily towards the state." Moreover, the appellant presented evidence of the facts underlying certain charges and the escape conviction in his criminal history. The trial judge is required to consider the Presentence Report in his sentencing determination. Tenn. Code Ann. § 40-35-210(b)(2) (Supp. 1996). There is no indication anywhere in the record that the appellant sought to have the state prove the prior convictions by any greater evidence than that which was presented at the sentencing hearing. Absent a challenge to the reliability of the information presented by the state through the Presentence Report, the court did not err in considering it. State v. Richardson, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993) (trial court properly considered appellant's criminal history as reported in Presentence Report in imposing sentence where defendant did not deny earlier crimes or refute accuracy of information in Presentence Report); cf. Tenn. Code Ann. § 40-35-209(b) (Supp. 1996) (court may consider "reliable hearsay" if opposing party is

28

given fair opportunity to rebut such hearsay evidence). In this limited circumstance, it is irrelevant whether certified copies of convictions have been filed. See State v. Dewayne Foster, No. 01C01-9501-CC-00008, slip op. at 6-7 (Tenn. Crim. App., Nashville, Nov. 21, 1995) (appellant not entitled to relief on trial court's sentencing determination where his only challenge was to state's failure to file certified copies of convictions, not to the accuracy of those convictions); State v. Richard J. Crossman, No. 01C01-9311-CR-00394, slip op. at 11-12 (Tenn. Crim. App., Nashville, Oct. 6, 1994) (in determining sentence, trial court properly relied on criminal history of defendant contained in Presentence Report despite absence of certified copies of convictions where defendant did not object to accuracy of information), perm. app. denied (Tenn. 1995).

The appellant also challenges the weight the trial court gave his criminal history in imposing the sentences. The appellant contends the trial court "should not use a mere arrest in determining what sentence to impose." The law, however, allows the court to consider criminal convictions or criminal behavior. Tenn. Code Ann. § 40-35-114(1) (Supp. 1996). This court has previously recognized that a trial judge may find evidence of criminal behavior even though there has been no conviction. State v. Massey, 757 S.W.2d 350 (Tenn. Crim. App. 1988); cf. State v. Buckmeir, 902 S.W.2d 418 (Tenn. Crim. App. 1995) (evidence of pending charges, without more, is not enough to establish criminal activity). In this case, the appellant took the witness stand at sentencing and testified about some of his prior criminal activity. The appellant's testimony was sufficient to establish that he had broken the law on numerous occasions by smoking marijuana. This is "criminal activity" even though there is only one conviction for marijuana possession. Moreover, the record reflects that the trial court primarily considered the possession and escape convictions, as well as "a pattern of criminal activity that went on, not only [prior] to this event, but continued through this event and the

**29**

disturbing thing about that pattern of criminal activity is that it involved violence to other individuals" in utilizing this enhancement factor. The judge further explained that he could infer from Mr. Nolan's testimony that he had smoked marijuana in jail, which would amount to additional criminal activity. Based on all of this evidence, we see no error in the weight the trial court gave to this factor.

The appellant likewise challenges the application of aggravating factor (9), that he employed a firearm in the commission of the kidnapping offense. His contention is that he was indicted for aggravated kidnapping, and because the use of a weapon is an element of that offense, the factor cannot be used again in enhancing his sentence. See Tenn. Code Ann. § 40-35-114, Sentencing Comm'n Comments (enhancement factors can be utilized if they are not essential elements of the indicted offense) (1990). The state counters this argument with citation to Sills v. State, 884 S.W.2d 139 (Tenn. Crim. App. 1994), which it contends carves out an exception for application of enhancement factors despite their character as essential elements of the offense where a conviction is obtained on a crime other than the indicted offense.

We agree with the state's interpretation of Sills and find its principles applicable to the 1989 Sentencing Act, even though it spoke to the 1982 Act. See also State v. Michael Shane Emmert, No. 03C01-9210-CR-00354, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 5, 1993). The relevant indictment in this case alleges aggravated kidnapping through use of a deadly weapon. The appellant was convicted of kidnapping. The use of a deadly weapon is not part of the statutory definition of kidnapping. Thus, in sentencing the appellant on his conviction of kidnapping, the trial court did not err in enhancing the appellant's sentence based upon his use of a firearm while committing the offense.

30

## B.    Mitigating Factors

Next, we consider the challenge pertaining to the mitigating factors the trial court declined to consider in imposing the sentences.  The appellant submitted three mitigating factors for the trial court's consideration -- (1) substantial grounds exist tending to excuse or justify the defendant's criminal conduct, although failing to establish a defense, (2) the defendant was suffering from a mental or physical condition that significantly reduces his culpability for the offense (excluding any condition caused by the voluntary use of intoxicants) and (3) the defendant, though guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct.  See Tenn. Code Ann. § 40-35-113 (3), (8) and (11) (1990).  At the sentencing hearing, the trial judge commented on these factors:

> I'm going to rule and I want the record clear so you'll be able to use it and argue from it, I've read all three of you[r] mitigators and I'm going to rule that what you're saying to me is the same thing three different ways.  You're saying Judge, consider his mental condition and I'm going to find that mental condition is a mitigating factor in this case, but that I don't have three separate mitigating factors here.  I've got one mitigating and that's the mental condition and I'm saying that so the record will be clear, because someone else might could [sic] read those and say, no, you're not right.  They are [sic] three here and you need to be able to argue that.

The state defends the judge's ruling, arguing that the trial court's statement merely refers to the weight he was giving each of the three mitigating factors.  We believe the judge meant what he said -- that he was rejecting the statutory mitigating factors requested by the appellant and applying only one general mitigating factor pertaining to the appellant's mental health.  In this result, we believe the trial court was correct, and we find additional grounds supporting the trial court's decision.  First, we reject the argument the appellant did not have a sustained intent to violate the law.  The evidence presented at trial through Dr. Farooque that the appellant continued to use marijuana while in pretrial detention belies this argument.  Further,

31

we do not believe that on the facts of this case the appellant's mental condition equals a substantial ground to justify or excuse the appellant's placing several other people in jeopardy of physical harm.

The appellant likewise complains that the trial court failed to consider the defendant's remorse in mitigation. See Tenn. Code Ann. § 40-35-113(13) (1990) (allowing the court to consider "any other factor" consistent with the Sentencing Reform Act as a mitigating factor); State v. Moss, 727 S.W.2d 229, 240 (Tenn. 1986). Because we believe the defense has failed to establish the propriety of this factor in light of all of the evidence, we find no error in the trial court's failure to consider this miscellaneous factor.

## C. Length of Sentences

Having reviewed the enhancement and mitigating factors challenged by the appellant, we move to the question of the propriety of the length of the sentences. The appellant received sentences of six years for kidnapping, nine years for attempted second degree murder, and eleven months and twenty-nine days for assault.[18] The kidnapping and assault sentences were ordered to be served concurrently to one another, and both were ordered to run consecutively to the attempted second degree murder conviction. Thus, the appellant's effective sentence is 15 years.

In imposing a sentence on a felony conviction where enhancement

---

[18]Tennessee Code Annotated § 40-35-302(d) (Supp. 1996) requires the trial court to specify the percentage of a misdemeanor sentence which the defendant is being required to serve. We interpret the court's judgment on the assault case to fix 30% as the time to be served on the misdemeanor.

and mitigating factors have been found, the trial judge must begin at the minimum sentence within the range, apply the enhancement factors to enhance the sentence within the range, and then apply the mitigating factors to reduce the sentence within the range. Tenn. Code Ann. § 40-35-210(e) (Supp. 1996). The appellant has two felony convictions as a result of the crimes that are the subject of this appeal. As a Standard, Range I offender, the appellant faced 3 to 6 years for kidnapping, a Class C felony, and 8 to 12 years for attempted second degree murder, a Class B felony. See Tenn. Code Ann. § 39-13-303(b) (1991) (kidnapping); Tenn. Code Ann. § 39-12-107(a) (1991) (attempt); Tenn. Code Ann. § 39-13-210(b) (1991) (second degree murder).

The enhancement factors for the kidnapping conviction are the appellant's previous history of criminal convictions or criminal behavior, Tenn. Code Ann. §40-35-114(1) (Supp. 1996), the offense involved more than one victim, Tenn. Code Ann. § 40-35-114(3) (Supp. 1996), and the appellant possessed or employed a firearm during the commission of the offenses. Tenn. Code Ann. § 40-35-114(9) (Supp. 1996). The mitigating factor is the defendant was suffering from a mental or physical condition that significantly reduces his culpability for the offense (excluding any condition caused by the voluntary use of intoxicants). Tenn. Code Ann. § 40-35-113(8) (1990). Giving due regard to the presumption of correctness afforded the trial judge, we find the appellant's nine year sentence is appropriate.

For the attempted second degree murder conviction, the trial court applied the prior criminal history enhancement factor and the sole mitigating factor. Again affording the trial judge the presumption of correctness, we find the appellant's six year sentence is appropriate.

In imposing a sentence on a misdemeanor conviction, the trial judge

**33**

is not bound by a presumption the defendant is entitled to the minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994) (citations omitted). In the case at bar, the appellant has one misdemeanor conviction which is before us for review. The appellant was convicted of assault, which is a Class A misdemeanor and which carries a maximum confinement of 11 months and 29 days. See Tenn. Code Ann. § 39-13-101(b) (1991); Tenn. Code Ann. § 40-35-111(e)(1) (1990). Considering the principles of sentencing, the evidence and arguments before the court at sentencing (including the presentence report, the defendant's statement, the evidence adduced at trial, and the arguments of counsel) and this court's view of the appellant's amenability to rehabilitation, we agree with the result reached by the trial court. In our view the result is appropriate regardless of whether the presumption of correctness applies to this misdemeanor sentence.[19] Thus, the appellant's sentence of 11 months, 29 days for assault is affirmed.[20]

## D.    Consecutive Sentencing

The appellant protests the imposition of consecutive sentences, giving him an effective 15-year sentence. Consecutive sentencing may be imposed by the trial court upon a determination that one or more of the criteria set forth in Tennessee Code Annotated Section 40-35-115(b) exist.

In the case at bar, the trial judge relied on Code section 40-34-114(b)(4), finding the appellant was a dangerous offender. Our supreme court has

---

[19]The trial court made no findings of fact on the record concerning the misdemeanor sentence.

[20]See State v. Kenneth Eugene Troutman, No. 03C01-9509-CC-00287 (Tenn. Crim. App., Knoxville, Nov. 6, 1996) (Hayes, J., dissenting).

recently addressed the issue of consecutive sentencing in a case involving the "dangerous offender" subsection of Code section 40-35-115. See State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). In Wilkerson, the supreme court held that consecutive sentencing, although inherently a case-by-case determination, is appropriate where a defendant was appropriately classified as a dangerous offender under Code section 40-35-115(b)(4), and consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. Wilkerson, 905 S.W.2d at 937-38. Moreover, the trial judge remains under the obligation to apply the sentencing principles and to provide justification for his sentencing determination. Wilkerson, 905 S.W.2d at 938. This obligation includes the duty to make appropriate findings and justifications regarding consecutive sentencing. See Wilkerson, 905 S.W.2d at 938-39. If the appellate court determines that the trial court has not considered the sentencing principles applicable to the facts and circumstances of the particular case, the case will be remanded to the trial court for resentencing. Wilkerson, 905 S.W.2d at 935.

In this case, the sentencing hearing took place prior to the release of the Wilkerson opinion. Nevertheless, we are convinced the trial judge considered the appropriate factors as required by Wilkerson. In addressing whether the appellant was a dangerous offender under Code section 40-35-115(b)(4), the trial judge said, "I'm interpreting the facts that I've heard this morning that there's been a whole series of violent activities. I don't know why there's not been a lack of hesitation. I can reasonable [sic] conclude there certainly has been a lack of hesitation. Now it may be because of the mental hesitation, but nevertheless it's occurred." We believe this statement satisfies the statutory definition that the appellant's behavior indicates little or no regard for human life and that he has no hesitation about committing a crime in which the risk to human life is high. See

Tenn. Code Ann. § 40-35-115(b)(4) (1990). Additionally, the trial court found that the appellant's psychological concerns and drug abuse had not been adequately addressed in the past because the criminal justice system had deferred on multiple occasions to the mental health system, and adequate treatment had not been provided. These untreated conditions resulted in the crimes of which the appellant was convicted, and consecutive sentencing for the attempted second degree murder and kidnapping convictions was necessary so that the appellant could "get some help" and to "assure that during a reasonable period of time that [sic] others in the community are protective [sic] from [the appellant's] behavior[.]" The court also remarked on the gravity of the offenses, noting that "somebody could have very well gotten killed[.]" We believe these statements by the trial court satisfactorily support the requirement that the trial judge find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. See Wilkerson, 905 S.W.2d at 937-38. The trial court went on to conclude that these facts supported consecutive sentencing on the attempted second degree murder and kidnapping convictions. We find that the appellant has failed to demonstrate the impropriety of consecutive sentencing. Accordingly, this issue is without merit.

### E.      Alternative Sentencing

Finally, we turn to the appellant's challenge of the trial court's denial of alternative sentencing. In his brief, the appellant makes two arguments regarding alternative sentencing. First, he contends the trial court imposed a sentence greater than eight years "for the purposes of denying eligibility for probation." Second, he maintains he should have been sentenced to Community Corrections.

The legislature has recognized that prison capacity is limited and has

**36**

determined that certain offenders should be given priority for prison space. Particularly, confinement is a priority for "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation[.]" Tenn. Code Ann. § 40-35-102(5) (Supp. 1996). Moreover, especially mitigated or standard offenders convicted of Class C or lesser felonies are presumed to be favorable candidates for alternative sentencing absent contrary evidence, provided they do not qualify under the previous provision as offenders for whom incarceration is a priority. Tenn. Code Ann. § 40-35-102(6) (Supp. 1996). Thus, as a Class B felon, the appellant is not presumed to be a favorable candidate for alternative sentencing under the 1989 Sentencing Act, at least as to the attempted second degree murder conviction.

With respect to probation, an individual is eligible for the alternative sentence of probation if the actual sentence imposed is 8 years or less. Tenn. Code Ann. § 40-35-303(a) (Supp. 1996). Eligibility, however, does not equate to entitlement to a probation sentence. State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). Moreover, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1990 repl.); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the case before us, the appellant contends the trial court imposed a nine year sentence on the attempted second degree murder conviction for the purpose of denying the appellant probation.

Because we have found the appellant's attempted second degree murder sentence of nine years to be appropriate, the appellant is ineligible for probation under the statute, and we are not required to address this issue. We note parenthetically, however, that the appellant has offered no citation to the record to

**37**

support his bare assertion that the trial court contrived the sentence as a means of disqualifying the appellant for probation.

The appellant also claims the trial court should have considered an alternative sentence of Community Corrections. With respect to review of issues pertaining to the Community Corrections Act, this court considers the sentencing considerations announced in Code sections 40-35-103 and 40-35-210, the eligibility criteria of the Community Corrections Act, Tenn. Code Ann. § 40-36-106, and the report of the entity administering the local Community Corrections Program. State v. Taylor, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987).

Initially, we note that a Community Corrections sentence is a privilege generally reserved for those who have not been convicted of crimes against the person. See Tenn. Code Ann. § 40-36-106(a)(2) (Supp. 1996). Although the appellant is initially disqualified for Community Corrections due to his convictions for crimes against the person, a "savings" provision elsewhere in the statute provides for eligibility of felony offenders who would otherwise be disqualified and "who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse or mental health problems, but whose special needs are treatable and could best be served in the community rather than in a correctional institution[.]" Tenn. Code Ann. § 40-36-106(c)(Supp. 1996).

The appellant insists he should be considered for Community Corrections under this provision. Based upon the record and the trial court's comments, the trial court clearly found that the appellant's mental health problems were not best served in the community. Thus, we find the appellant has failed to demonstrate that the trial court's failure to sentence him to Community Corrections was improper.

In summary, we reverse and dismiss the conviction for aggravated assault. This matter is affirmed in all other respects.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
DAVID G. HAYES, JUDGE