**William F. SILLS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 14, 1994.

Permission to Appeal denied by Supreme Court Aug. 29, 1994.

Stephen M. Wallace, Office of the Public Defender, Blountville, for appellant.

Charles W. Burson, Atty. Gen., and Merrilyn Feirman, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., and H. Greeley Wells, Jr., Edward E. Wilson, Asst. Dist. Attys. Gen., Blountville, for appellee.

### OPINION

TIPTON, Judge.

The petitioner, William F. Sills, appeals as of right from the life sentence imposed by the Sullivan County Criminal Court after the trial court had granted him post-conviction relief from a previous life sentence resulting from his 1987 second degree murder conviction. The petitioner contends that the trial court erred by resentencing him under the 1982 Sentencing Act instead of the 1989 Sentencing Act and, in any event, by imposing a life sentence. The state joins in the petitioner's request that the case be remanded for sentencing pursuant to *State v. Pearson*, 858 S.W.2d 879 (Tenn.1993). In *Pearson*, the supreme court provided that in cases involving pre–1989 act offenses for which sentencing is to occur after the effective date of the 1989 act, a trial court is to determine the appropriate sentence under each of the acts and then impose the lesser of the two. *Id.* at 884. Under the peculiar posture of this case, we respectfully disagree with the parties' contentions and we conclude that the trial court properly applied the 1982 act.

The petitioner was originally charged with the first degree murder of a cab driver who was found shot to death. The state's theory was that the petitioner was a passenger in the cab and robbed the driver, during which the driver was killed. The petitioner admitted being in the cab and possessing a firearm, but he claimed that he was drunk, that the driver attempted to rob him, and that he shot the driver in response. The jury convicted him of second degree murder.

The original life sentence was based upon the petitioner being a Range II, persistent and especially aggravated offender under the 1982 Sentencing Act. He was found to be a persistent offender because of five prior felony convictions—three 1974 heroin sale convictions in Montgomery County, a 1983 attempt to commit automobile burglary conviction in Sullivan County, and a 1984 robbery conviction in Davidson County. *See* T.C.A. § 40–35–106(a) (1982) [repealed]. He was found to be an especially aggravated offender because the murder was committed while he was on parole from the robbery conviction. *See* T.C.A. § 40–35–107(3)(B) (1982) [repealed]. The sentence was affirmed on direct appeal with this court stating that the "most significant factor in the record is the defendant's long history of criminal convictions," particularly referring to "burglary, larceny, robbery, and the sale of heroin." *State v. William Francis Sills*, No. 808, Sullivan Co., 1988 WL 79775 at *5 (Tenn.Crim. App., Aug. 1, 1988).

Through subsequent post-conviction cases, the petitioner successfully attacked and had vacated the convictions for the three drug felonies and the attempt to commit automobile burglary because they were obtained by means of constitutionally invalid guilty pleas. Consequently, his ultimate request to the trial court in the murder post-conviction case was that his previous sentence be voided and that he be resentenced as a Range I, standard offender.

Procedurally, although certain post-conviction issues remained to be litigated, the trial court stated that it was ready to proceed with a sentencing hearing and to hear any evidence either party had to offer. Neither party proffered any evidence not already existing in the record and the petitioner asserted that sentencing was a "question of legal issues" as opposed to testimony. He contended that he was entitled to resentencing under the 1989 act. The trial court disagreed, stating the following:

> In re-sentencing I hold that the Sentencing Reform Act of 1982 continues to apply because this involves strictly an adjustment in the original sentencing. The entire sentence has not been set aside due to substantive or procedural flaws or due to lack of jurisdiction. It's simply adjusting the sentence to conform with all these prior convictions having been set aside, four (4) of five (5). The one that has not been set aside though is the one for which he was on parole. I think the notice was sufficient. It stated that he was on parole. It stated that one of the offenses for which he was on parole was robbery and that fact is correct. I don't think that it is technically flawed under the cases that construed the notice statute in effect at that time were very liberal in construing the notice, much more so than the statute of today. So I don't think the notice is flawed at all. So under the present law or under the 1982 law he is still a Range II Offender because, as the parties agree, it was an especially—it would be an especially aggravated offense under that law, T.C.A. 40–35–107, a felony committed while on parole, subsection (3), subsection (B).

Its reasoning was based upon *State v. Polk*, 845 S.W.2d 171 (Tenn.1992), in which the supreme court held that the 1982 act continued to apply to a case remanded for partial modification of the original sentence after the effective date of the 1989 act.

After the petitioner sought to distinguish *Polk* by contending that sentencing in his case involved a change in the facts, i.e., the change in the number of prior convictions, the trial court stated that "this is just simply a modification of the original procedure where you're simply changing the sentence from a Range II forty percent (40%) sentence to a Range II thirty-five percent (35%) sentence." From the record before it, the trial court proceeded to determine the existing enhancement and mitigating factors, to consider the circumstances surrounding the offense and the petitioner's background, and to impose a life sentence upon him as a Range II, especially aggravated offender.

The petitioner contends that *Polk* is distinguishable from his case because, in *Polk*, the underlying facts never changed, the resentencing resulted from a "narrow appellate remand order on direct appeal" based solely upon improper application of the sentencing law, and there was no "full blown sentencing

hearing in which enhancement and mitigating factors were weighed." The state refrains the last contention by stating in its brief:

> [A]s the Judge had to reweigh the evidence in determining the defendant's sentence, the new hearing constituted a resentencing rather than modification of his original sentence. Accordingly, the defendant is entitled to have his sentence determined pursuant to the 1982 and 1989 Act and then have the lesser of the two sentences imposed.

Under the 1989 act, absent constitutional prohibition, any person sentenced after its effective date for an offense occurring while the 1982 act was in effect is to be sentenced under the 1989 act. T.C.A. § 40–35–117(b). The legislature enacted the 1989 act with the following provision:

> Section 115. This act shall not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before its effective date.

1989 Tenn.Pub.Acts, ch. 591; *See* T.C.A. § 1–3–101. A question arose under these provisions regarding which act applied when the original sentencing occurred under the 1982 act but appellate review resulted in the case being remanded for resentencing after the effective date of the 1989 act.

The Tennessee Supreme Court undertook to answer the question in *Polk*. Polk was originally sentenced under the 1982 act as a Range I, standard offender to an effective sentence of twenty-five years imprisonment for armed robbery and two assaults with intent to commit first degree murder with bodily injury while employing a firearm. The state appealed on the ground that the trial court was obligated to impose Range II sentences because the willful infliction of serious bodily injury made Polk an especially aggravated offender. *See* T.C.A. § 40–35–107(2) (1982) [repealed]. This court agreed and remanded the case "for sentencing of the defendant Polk within Range II for the convictions of armed robbery and assault with intent to commit first degree murder...."

*State v. James Larry Polk and Maurice Donaldson,* No. 88–262–III, Davidson Co., 1989 WL 140550 at *6 (Tenn.Crim.App., Nov. 22, 1989).

Upon the remand, the trial court resentenced Polk using both acts in hybrid form. On appeal, this court held that the 1989 act applied. The supreme court reversed. It noted that this court's remand was for the purpose of sentencing under the 1982 act and that the trial court could have complied with the mandate by merely entering an order of modification. It concluded that the case "involves only a partial modification of the original sentence and, as such, constitutes a continuation of the original procedure subject to the 1982 act." *Polk,* 845 S.W.2d at 173. In further explanation, it stated the following:

> If the entire sentence had been set aside due to a substantive or procedural flaw in the original sentencing hearing or to lack of jurisdiction, and if the case then been remanded for an entirely new penalty hearing, a different result might well follow.

*Id.* We conclude that there is no substantive distinction in this case which would preclude *Polk*'s application.

First, it is appropriate to recognize the underlying posture of this case. The Post–Conviction Procedure Act was created to address and remedy constitutional wrongdoing in the convicting or sentencing process which is significant enough to render the conviction or sentence void or voidable. *See* T.C.A. § 40–30–105. Effectively, this act provides procedural authority for a court to reopen the original case in order to right a constitutional wrong. Yet, the vacation of the judgment[1] for post-conviction relief purposes pursuant to T.C.A. § 40–30–118(a) does not mean that the original case is automatically voided from its inception. What it does mean is that the original case may be returned to the particular stage needed to remedy the constitutional wrong found to have occurred. Therefore, in some circumstances when the remedy requires a new trial, a case

---

1. The judgment includes "the plea, the verdict or findings, and the adjudication and sentence" and is signed by the judge. Tenn.R.Crim.P. 32(e);

*see also* S.Ct.R. 17 (uniform judgment form for judge sentencing).

is returned to the pretrial stage, while in other circumstances the remedy does not require a new trial, but may require returning a case to the presentencing stage. In the latter case, whether the resentencing is viewed as an amendment to the original judgment or as part of a new judgment, the trial court would be summarily reaffirming the original finding of guilt.

In this respect, the constitutional violations in this case related, presumably, to the petitioner's due process right not to have his murder sentence enhanced by previous convictions which were obtained in violation of his right to due process. However, the use of these convictions was irrelevant to his being sentenced as a Range II, especially aggravated offender. That is, the prejudicial impact of the constitutional wrongdoing went no further than making him a persistent offender, enhancing his sentence within Range II, and potentially increasing from thirty-five percent to forty percent the part of the sentence not available for statutory release eligibility. *See* T.C.A. § 40–35–501(d) and (e) (Supp.1988) [repealed].[2] Thus, there simply is no constitutional interest involved which would require granting the petitioner relief from his status as a Range II, especially aggravated offender.

The trial court recognized the distinction and refused to disturb the original Range II determination under the 1982 act. By this action, the trial court was recognizing what is implicit in *Polk*'s partial modification approach—an ultimate sentence under the 1982 act derives from a composite of category determinations, such as range status, offender status, and enhancement and mitigating factors, and an invalid determination in one category does not necessarily invalidate the whole sentence or require an entirely new sentencing hearing. Thus, we conclude that the trial court acted properly under the Post–Conviction Procedure Act by, in effect, vacating only a part of the original sentence. *See, e.g., Wallen v. State,* 863 S.W.2d 34, 35–36 (Tenn.1993) (noting with approval the post-conviction court's refusing to vacate and

reaffirming a Range II, especially aggravated offender status even though the persistent offender status was vacated).

Therefore, as a practical matter, the trial court, as the sentencing court, was placed in no different posture than if the persistent offender status had been vacated upon direct appeal and the case remanded for resentencing the petitioner as a Range II, especially aggravated offender without consideration of the voided prior convictions. In this respect, as the trial court ruled, the resentencing constituted a partial modification of the original sentence.

As to the parties' claims that the change in facts and the need to reweigh evidence distinguishes this case from *Polk,* we conclude that such distinctions are of no consequence under the circumstances in this case. We recognize that the supreme court noted in *Polk* that no further evidence was offered or necessary for the trial court to resentence. However, we do not believe that *Polk* turned on this point. The core holding in *Polk* is that a resentencing for the purpose of making a partial modification of the original sentence, which has not been totally set aside so as to require an entirely new sentencing hearing, constitutes a continuation of the original sentencing process.

The petitioner attempts to support his position with an unreported decision from this court in which the 1989 act was applied after a prisoner successfully attacked a pre–1989 act habitual criminal life sentence because it was based upon constitutionally invalid prior convictions. *See Larry Curtis Chamberlain v. State,* No. 02C01–9204–CC–00086, Benton Co. 1993 WL 259579 (Tenn.Crim.App., July 14, 1993). However, that case necessarily entailed voiding the underlying penalty trial verdict of habitual criminality which was based upon the void prior convictions. Obviously, to remedy the constitutional wrong in *Chamberlain* it was necessary to set aside both the entire sentence and the sentencing hearing upon which the habitual criminal

---

2. In fact, the prejudice to the petitioner relative to his release eligibility date may have been more illusory than real if his life sentence was validly imposed solely because he was a Range II, especially aggravated offender. *See* T.C.A. § 40–35–501(f) (Supp.1988) [repealed] (release eligibility for life sentence occurs after thirty years).

sentence was based. As opposed to the circumstances in the present case, an entirely new sentencing hearing was required and an entirely new sentence had to be imposed. Thus, we distinguish *Chamberlain* because of the different circumstances it involved.

We hold that when an original sentence under the 1982 act includes a Range II, especially aggravated offender status which was correctly determined, a requirement of resentencing to address an invalid persistent offender determination and invalid enhancement within Range II constitutes only a modification of the original sentence. The fact that a trial court may be required to reassess the validly remaining evidence relevant to sentencing and to reweigh its importance in setting the ultimate sentence within the range does not mean that more than a partial modification of the original sentence is occurring. Thus, in this case, after it determined that the prejudice flowing from the violation of the petitioner's constitutional rights did not spread to his sentence as a Range II, especially aggravated offender, the trial court was authorized to reaffirm or to refuse to vacate those portions of the original sentence and to conduct a limited sentencing hearing for the purpose of imposing an appropriate sentence within the existing range. Because the 1989 act is not involved, the sentencing analysis required by *State v. Pearson, supra,* does not apply.

■ Regarding the life sentence as imposed, the petitioner assails the sufficiency of the state's enhancement notice and of the proof that he was on parole at the time of the commission of the murder. Initially, we question if the petitioner is even entitled to attack the Range II, especially aggravated offender determination in this proceeding, given the fact that the trial court did not order relief from that aspect of the original sentence and was only conducting a partial modification hearing. The record reflects that the petitioner's original trial counsel conceded the fact that the petitioner was on parole when confronted with the state's evidence of that parole. Also, the record reflects that the trial court in this case ultimately held that the petitioner's trial counsel had provided the effective assistance of coun-

sel in the original case. In any event, we conclude that the record amply proves that the petitioner received sufficient notice of the state's intent to enhance his sentence by virtue of his parole status and that the petitioner was, in fact, on parole from his still valid robbery conviction when he committed the murder.

■ Finally, the petitioner complains about the enhancement factors used by the trial court for resentencing. The trial court found the existence of the following enhancement factors contained in T.C.A. § 40–35–111 (1982) [repealed]:

(1) The defendant has a previous history of criminal convictions or criminal behavior.

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense.

(10) The defendant had no hesitation about committing a crime when the risk to human life was high.

The trial court stated that the primary factors in its consideration were factors (1) and (8). The petitioner argues that the trial court erred in the emphasis it apparently placed on factor (1) even though four prior convictions had been vacated, in applying factor (9) when it was a necessary element of the felony murder (in perpetration of an armed robbery) charged in the indictment, and in applying factor (10) which is inherent in any murder case.

We view the circumstances similarly to this court's view in the direct appeal and the trial court's view relative to the important enhancement factors. At the time of the original sentence, the petitioner was a thirty-nine-year-old, high school graduate who admitted to a history of drug and alcohol abuse. A clinical psychologist examined the petitioner and found no evidence of a mental condition which would question his sanity or his competence. The psychologist concluded that

the petitioner fit the criteria for antisocial personality disorder.

The petitioner reported "2 or 3" charges of auto theft and a federal conviction of crossing state lines (transporting a stolen vehicle) while he was a juvenile. He said that he spent four months in a state vocational school. In 1968, he was convicted in Stewart County of petit larceny, burglary, assault with intent to commit armed robbery and destruction of Stewart County Jail property. In 1972, he was convicted in Montgomery County of grand larceny. In 1977 and 1978, he was convicted in Sullivan County of D.U.I. and disorderly conduct. His record reflects convictions in Bristol, Virginia, for reckless driving and public drunkenness. In 1984, the petitioner was convicted in Davidson County of malicious mischief and robbery. The record indicates that he has had several periods of incarceration in his past.

After being paroled on July 1, 1986, the petitioner traveled to Sullivan County without the permission of his parole officer and he committed the murder in this case some three and one-half months after he was paroled. The record indicates that during the investigation of the murder, the police found the petitioner to be in possession of a car which had been stolen in Davidson County and in possession of personal property which had been taken in a Davidson County burglary. Obviously, as a felon, he illegally possessed the firearm with which he committed the murder and other guns were found in his car. The petitioner had a substantial sum of money upon him when he was arrested, which he claimed to have won by gambling. Also, the presentence report stated that while the petitioner was being held in the Sullivan County Jail, he was cited for causing disturbances, throwing things, and fighting.

At the original sentencing hearing, the trial court concluded that the evidence showed that the petitioner had actually committed a first degree murder while committing an armed robbery of the victim. It stated that the petitioner's claimed defense was ridiculous. Also, it concluded that the evidence

before it reflected that the petitioner was on a "crime spree" when the murder was committed. In the direct appeal, this court agreed with these assessments.

In this case, the trial court noted that although three drug convictions had been set aside, the petitioner admitted to the presentence officer that he had sold heroin in the 1970s to support his own drug addiction. Finally, the trial court stated that even with the four prior convictions being set aside, the petitioner's record was so extensive that disregarding the voided convictions did not change the weight it previously gave to the existing enhancement factors. Particularly in terms of factors (1) and (8), we agree with the trial court.

■ As for enhancement under factor (9) because of his use of a deadly weapon to commit the murder, the petitioner argues that his being charged with murder during the perpetration of a robbery committed with a deadly weapon prohibits the factor from being used to enhance his sentence. Apparently, he is relying upon the exclusionary language in T.C.A. § 40–35–111 (1982) [repealed] which provides as follows:

> If appropriate for the offense, enhancement factors, if not themselves necessary elements of the offense charged in the indictment ... may include....[3]

In other words, the petitioner contends that the offense charged in the indictment is controlling even if the enhancement factor is not a necessary element of the offense for which he is actually convicted.

We interpret the statutory prohibition to apply only in terms of the offense for which a conviction is obtained. The reference to the "necessary elements of the offense charged in the indictment" necessarily relates to the convicting offense for sentencing purposes and was only meant to allow the use of factors which might be an alternative statutory element of the offense, but not charged in the indictment. For example, under T.C.A. § 39–13–102, an aggravated assault may occur either by the use of a deadly weapon

---

3. T.C.A. § 40–35–114 (1990) begins as follows:
    If appropriate for the offense, enhancement factors, if not themselves essential elements of
the offense as charged in the indictment, may include....

during the assault or by the assault causing serious bodily injury to another. If the indictment charges aggravated assault by causing serious bodily injury, section 111 would allow the use of a deadly weapon as an enhancement factor, even though its use constitutes an element of a form of aggravated assault under the aggravated assault statute. Therefore, we conclude that section 111 does not preclude the use of factor (9) to enhance the petitioner's sentence for the second degree murder conviction, because such offense does not include the use or possession of a deadly weapon as a necessary element.

■ Regarding the petitioner's claim that factor (10) is inherently included in the offense of second degree murder, we acknowledge that its application to crimes of violence has been problematic. Obviously, the offense of second degree murder involves more than just the risk to a human life and we can assume that the taking of a life has already been considered by the legislature in its setting the sentencing range which applies to such a murder. Further, although the trial court considered the important part of factor (10) to relate to the petitioner's lack of hesitation in committing such a crime, it did not articulate what facts or circumstances showed no hesitation. In any event, we conclude that the life sentence was appropriate even if factor (10) did not apply.

The petitioner's history of criminal behavior, of committing crimes while released into the community as part of sentences previously imposed, and of crimes involving violence or the threat of violence amply support a conclusion that he has a clear disregard for the laws of society. Given his background and the severity of his present offense, substantial confinement is necessary to protect society from the petitioner's criminal conduct. Under the circumstances in this case, we conclude that the trial court's imposition of a life sentence was justified. The judgment is affirmed.

WADE and PEAY, JJ., concur.