# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER 1997 SESSION



**FILED**

**April 24, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9708-CC-00299 |
| | ) | |
| v. | ) | Tipton County |
| | ) | |
| RANDAL A. THIES, | ) | Hon. Joseph H. Walker, III, Judge |
| | ) | |
| Appellant. | ) | (DUI - 3d, Driving while License |
| | ) | Suspended, Canceled or Revoked, Vehicular Homicide, Reckless Endangerment) |

**FOR THE APPELLANT:**

J. THOMAS CALDWELL
Attorney at Law
144 Jefferson St.
Ripley, TN 38063

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General & Reporter

ELIZABETH T. RYAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

ELIZABETH T. RICE
Dist. Attorney General

WALT FREELAND
Asst. Dist. Attorney General
302 Market St.
Somerville, TN 38068

**OPINION FILED:** _____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

**OPINION**

The defendant, Randal A. Thies,[1] appeals the length and manner of sentencing imposed upon him as a result of his convictions of third offense driving under the influence, driving while license suspended, canceled or revoked, vehicular homicide and reckless endangerment. Thies is presently incarcerated, serving his effective four and one-half year sentence consecutively to a previous 11 month, 29 day sentence upon which his probation was revoked as a result of the instant crimes. His sentence was imposed following a jury trial in the Tipton County Circuit Court. In this appeal, he raises three issues for our review:

1.  Whether the trial court erred in the imposition of a four and one-half year sentence by applying inappropriate enhancement factors.

2.  Whether the trial court erred in failing to impose an alternative sentence.

3.  Whether the trial court erred in imposing the four and one-half year sentence consecutive to a suspended sentence revoked because of the instant case.

Having reviewed the record, briefs and arguments of the parties, we affirm.

On February 24, 1996, Randal Thies had twice been convicted of driving under the influence. His driver's license was on revoked status, although he had been granted a restricted privilege to drive to and from work. Nevertheless, that morning Thies drove to a friend's house to work on a truck. He and the friend spent the day in each other's company, with the friend driving Thies's truck the rest of the day. In the late afternoon or early evening hours, Thies and the friend purchased beer, which they took to a party at the trailer home of a friend.

After consuming some beer, Thies decided to leave the party with two young women, Clarissa Dawn Fowler and Melissa Pruett. Although he had been

---

[1]We use the defendant's name as stated in the indictment, notwithstanding its contrary appearance elsewhere in the record. Likewise, we have used the victims' names as they appear in the indictment, even though spelled inconsistently in the record.

drinking and had a revoked license, the defendant drove his truck with Melissa Pruett seated to his immediate right and Dawn Fowler on the passenger side.[2]  At about 10:05 p.m., Covington Police Chief Clifton Deverell heard an engine revving and within a few seconds saw the defendant's truck disregarding a stop sign and making a turn.  He began following the truck, which he observed was going "very fast" in a heavily populated residential area of Covington in which the speed limit was 30 miles per hour.  During his pursuit, in which he never got within 300 feet of the truck, Chief Deverell reached speeds of about 60 miles per hour, yet he did not catch up to the defendant's truck.  Chief Deverell pursued the truck for 30 to 40 seconds until he lost sight of it as it crossed some railroad tracks.  Less than a minute later, he discovered the defendant's truck wrecked about 3/10 mile from where he had lost sight of it.  Both Fowler and Pruett were lying face down on the roadway.  The defendant was spotted walking out of a ditch shortly thereafter.

Dawn Fowler, seventeen years old, died from the massive injuries she sustained in the wreck.  Melissa Pruett, eighteen years old, was severely injured.  At first in a coma, she was hospitalized for six weeks.  Her numerous injuries included a head injury, a broken femur which required insertion of a metal rod, and facial lacerations which have resulted in scarring.  After she was discharged from the hospital, she was a patient at a rehabilitation facility in Arkansas which specializes in treatment of head injuries.  The defendant's injuries were comparatively minor, consisting primarily of scratches and scrapes and mild soft tissue swelling of the head.  The defendant was treated and released from the local hospital in a matter of hours.

The defendant was 22 years old on February 24, 1996.  His criminal record consisted of two prior DUI convictions in 1993 and 1995 and a speeding conviction in late 1995.  He admitted to the presentence officer that he began

_____

[2]At trial, the defendant claimed Pruett was driving and he was sitting in the middle when the group left the party.  The jury discredited the defendant's evidence, and that determination has not been challenged on appeal.

drinking alcohol when he was 16 years old and continued to drink a six-pack a week. He is a high school graduate, and at the time of sentencing had been employed since graduation by World Color Press. His supervisor testified at the sentencing hearing about his good work record. The defendant was single and had resided with his parents until he was incarcerated. His father testified he would do his best to see that his son complied with the terms of the sentence imposed. Thies also informed the presentence officer that he had been undergoing treatment for insomnia and depression since March 1996. A family friend testified as a character witness, stating the defendant was well-mannered and helpful. The defendant took the stand at sentencing to profess his remorse and willingness to comply with the terms of the sentence imposed by the trial court.

After determining the enhancement and mitigating factors to be applied, the trial court sentenced the defendant as follows:

> Third offense DUI - 11 months, 29 days, 75% release eligibility, suspension of driving privileges for 3 years, fine of $1,100.
>
> Driving while license suspended, canceled or revoked - 6 months, 75% release eligibility, suspension of driving privileges for 1 year.
>
> Vehicular homicide - 4 years, 6 months, suspension of driving privileges for 4 years.
>
> Reckless endangerment - 11 months, 29 days, 75% release eligibility.

All four sentences were imposed concurrently to one another but consecutively to an earlier DUI sentence upon which Thies's probation had been revoked as a result of this case.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our de novo review, we must consider the evidence at sentencing, the presentence

4

report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

In the case at bar, the trial court engaged in thoughtful consideration of the relevant variables; however, in reaching its sentencing determination, it erroneously applied some of the enhancement factors. Accordingly, we must conduct our review unaccompanied by the presumption of correctness.

I

First, we consider the issue of the length of the defendant's sentences. The trial court found the presence of the following enhancement factors:

(1)     The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(3)     The offense involved more than one (1) victim;

(6)     The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;

(8)     The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(13)    The felony was committed while on any of the following forms of release if such release is from a prior felony conviction . . . probation;

(16)    The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114(1), (3), (6), (8), (13)(C), (16) (1997). The court applied factor (3) only to the conviction of vehicular homicide. The court further found factors (8) and (13) should be considered as only one factor, indicating it

5

weighed them less heavily.

In mitigation, the court found that the defendant had a good work history and work ethic. See Tenn. Code Ann. § 40-35-113(13) (1997).

**Enhancement Factor (1)**

We begin our review by examination of the enhancement factors found by the trial court. The defendant concedes the applicability of factor (1), and we find this factor particularly appropriate in light of the defendant's recent history of two DUI convictions and a speeding conviction. Additionally, the defendant admitted he drove to a friend's house on the morning of the wreck, even though his license was revoked and he was permitted only to drive to and from work. This constitutes evidence of further criminal activity. Under the circumstances of this case, factor (1) was entitled to significant weight.

**Enhancement Factor (3)**

Factor (3), on the other hand, should not have been applied. As the state concedes, this factor is inappropriate where, as here, the state has obtained separate convictions for each of the multiple victims. State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994); State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987).

**Enhancement Factor (6)**

Turning to factor (6), the state offers the concession that this factor is inappropriate because the victims' personal injuries have already been taken into account by the statutory definition of vehicular homicide. See Williamson, 919 S.W.2d at 82; Lambert, 741 S.W.2d at 134. We agree with the state that a "killing" of another under the vehicular homicide statute is unquestionably inclusive of particularly great bodily injury as contemplated by factor (6). See Tenn. Code Ann.

6

§ 39-13-213 (1997).

However, we see nothing prohibiting the application of this factor to the conviction of reckless endangerment.[3] The statutory definition of reckless endangerment proscribes reckless conduct "which places or may place another person in imminent danger of death or serious bodily injury." See Tenn. Code Ann. § 39-13-103(a) (1997). The offense of reckless endangerment may occur even though a victim does not suffer actual bodily injury. State v. Ramsey, 903 S.W.2d 709, 712 (Tenn. Crim. App. 1995); State v. Baggett, 836 S.W.2d 593 (Tenn. Crim. App. 1992). Therefore, factor (6) is an appropriate enhancement factor. Accord State v. Michael Shane Emmert, No. 03C01-9210-CR-00354, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 5, 1993) (factor (6) applied to reckless endangerment conviction). But cf. State v. Ivory Brown, No. 02C01-9303-CC-00036, slip op. at 16 (Tenn. Crim. App., Jackson, Dec. 1, 1993) (factor (6) inappropriate for sentencing on reckless endangerment conviction; however, court did not specify whether it excluded this factor based upon lack of sufficient supporting evidence of record or inapplicability as a matter of law).

Additionally, the application of factor (6) is not prohibited as a matter of law for the defendant's DUI and driving on revoked license convictions. Those crimes do not include particularly great bodily injury in their statutory definitions. See Tenn. Code Ann. §§ 55-10-401, 55-10-403, 55-10-504 (1993 and Supp. 1997). We find that the trial court incorrectly applied this factor to the vehicular homicide conviction, but not the other three convictions.

**Enhancement Factor (8)**

---

[3]The defendant claims factor (6) is inapplicable because particularly great injury is an element of the indicted offense of vehicular assault. The defendant was convicted of the lesser offense of reckless endangerment. The conviction offense, not the indicted offense, is scrutinitzed for determining applicable enhancement factors. See, e.g., State v. Dale Nolan, No. 01C01-9511-CC-00387, slip op. at 33 (Tenn. Crim. App., Nashville, June 26, 1997); State v. Michael Shane Emmert, No. 03C01-9210-CR-00354, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 5, 1993); Sills v. State, 884 S.W.2d 139, 145 (Tenn. Crim. App. 1994) (applying rule to 1982 Sentencing Act). Accordingly, we have considered the elements of the crime of reckless endangerment.

Next, the defendant disputes the application of factor (8), claiming he has no "previous" history of unwillingness to comply with a non-incarcerative sentence simply because he committed these offenses while on probation. In support of his argument he calls our attention to State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995), which would support his argument if he had not overlooked pertinent additional facts. We are persuaded to a contrary result in part by Thies's own admission that he violated the law on the morning of February 24, 1996 by driving his truck to a friend's house even though his license was revoked. Additionally, the presentence report reveals that he was granted a partially suspended sentence for his first conviction of DUI in 1993. Just over two months into the term of that 11 month, 29 day sentence, he was again arrested for DUI and ultimately convicted. He was likewise convicted of speeding during the probationary period imposed for his second DUI conviction. Unlike the defendant in Hayes, Thies has a "previous" history of unwillingness to comply with the conditions of sentences involving release into the community. Application of factor (8) was proper.

**Enhancement Factor (10)**

The state claims factor (10) should be applied, even though the trial court did not consider it. With respect to the crime of vehicular homicide, high risk to human life is generally considered to be inherent within the offense, although factor (10) may be applied where facts independent of those relied upon to support the conviction establish risk to human life other than that of the victim. See, e.g., State v. Bingham, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995); Lambert, 741 S.W.2d at 134. This is such a case. The evidence at trial revealed that prior to driving his truck recklessly and causing it to strike a bridge, the defendant drove through a heavily populated residential area at an excessive rate of speed and disregarded a stop sign in order to evade the police chief, who himself had to drive his patrol vehicle at an excessive rate of speed on residential streets in an attempt to apprehend the defendant. Thus, an individual other than the victim was in the immediate vicinity and at risk because of the defendant's unlawful actions. Factor

8

(10) is appropriate for the vehicular homicide conviction.

Application of enhancement factor (10) to the reckless endangerment conviction is somewhat more problematic. The factor is generally considered to be encompassed in the definition of reckless endangerment. State v. Robert Chapman, No. 02C01-9510-CR-00304, slip op. at 6 (Tenn. Crim. App., Jackson, Jan. 14, 1997) (citations omitted), perm. app. denied (Tenn. 1997). Tennessee Code Annotated section 39-13-103(a) proscribes reckless conduct that "places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (1997) (emphasis added). As such, reckless endangerment may be committed when the other "person" is an unidentified person or persons, or when the person is a specific, named individual. See, e.g., State v. Wayne L. Hughes, No. 01C01-9502-CC-00033 (Tenn. Crim. App., Nashville, June 20, 1996) (defendant convicted in one county of reckless endangerment of "Trooper Rick Smith and others" and convicted in another county of reckless endangerment of "Trooper Robert Beard") (emphasis added), perm. app. denied (Tenn. 1996). An indictment which charges reckless endangerment, either as the charged offense or as a lesser offense of the charged offense, may specify whether a specific person, an unnamed person, or persons in general were endangered.

In the present case, the reckless endangerment conviction emanated from the count charging the vehicular assault upon Melissa Pruett. In order for reckless endangerment to have been a lesser offense of the charged offense, the "imminent danger of death or serious bodily injury" must have been directed toward the same person, Melissa Pruett, who allegedly suffered "serious bodily injury" under section 39-13-106, the vehicular assault statute. Viewed in this light, the conviction offense does not embrace the endangerment of persons other than Melissa Pruett, and accordingly, factor (10) does not include elements of the conviction offense.

We take this opportunity to harmonize our result with that reached in prior opinions of this court. See Robert Chapman (shooting in crowded arcade inside popular shopping mall); Wayne L. Hughes (high speed chase in which numerous motorists and law enforcement officers were placed at risk); State v. Arnold V. Porter, No. 01C01-9410-CC-00353 (Tenn. Crim. App., Nashville, Jan. 5, 1996) (high speed interstate chase in which there was evidence of risk to numerous motorists and law enforcement officers); cf. Ivory Brown, slip op. at 16. Notably, the Wayne L. Hughes and Arnold V. Porter opinions cited above reflect that the defendants in those cases were convicted of multiple counts of recklessly endangering law enforcement officers and "others" during high speed vehicular chases. In those cases, the exclusion of factor (10) was justified because, presumably, all of the individuals placed at risk were covered by the convictions. There were no individuals other than these "victims" to justify the application of factor (10). In contrast, the Robert Chapman panel did not identify the victim(s) of the reckless endangerment conviction. However, the relevant indictment may have charged the defendant with recklessly endangering all of the patrons of the arcade, and for that reason we do not find that case controlling. The Ivory Brown opinion does not reveal whether the panel found factor (10) inapplicable to the defendant's reckless endangerment conviction because it was unsupported by evidence or because it was an element of the crime.

Accordingly, we hold that factor (10) applies to Thies's reckless endangerment conviction, given the separate risk his reckless driving created prior to the wreck to the police chief and the residents of the heavily populated street upon which he drove in excess of 30 miles per hour above the speed limit, as those individuals were not named as victims in the count of the indictment which resulted in the reckless endangerment conviction.

Factor (10) is also applicable to Thies's DUI and driving on a revoked license convictions. It is not duplicative of the elements of those offenses.

10

**Enhancement Factor (13)**

The trial court applied factor (13), and neither party has addressed its propriety on appeal. Because we are engaged in a de novo review of the sentence, we feel constrained to address it sua sponte. Factor (13) allows for sentence enhancement where a felony has been committed while the defendant is on release status from another felony. On February 24, 1996, the defendant was serving a partially suspended sentence for driving under the influence, which is a Class A misdemeanor. Tenn. Code Ann. § 55-10-403(m) (Supp. 1997). Thus, factor (13) should not have been applied. We acknowledge, however, that the trial court only considered factor (13) in conjunction with factor (8) and assigned them cumulatively the weight of one factor.

**Enhancement Factor (16)**

The final enhancement factor we must consider is (16), which the defendant claims is inappropriate because it is inherent in vehicular homicide and vehicular assault charges.[4] The state concedes the factor's inapplicability to the crime of vehicular homicide based upon this court's holding in Bingham, 910 S.W.2d 448. This court has consistently followed Bingham in this regard. See, e.g., State v. Jerry Keith Ivey, No. 03C01-9509-CR-00292, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 3, 1996); State v. Williamson, 919 S.W.2d at 82. As such, we believe the trial court erred in applying this factor to the defendant's vehicular homicide conviction.

On the other hand, we cannot say the same for the remaining convictions. The definition of the crime of reckless endangerment encompasses the conduct factor (16) addresses. Robert Chapman, slip op. at 6. However, in this case, Thies, created risk to persons other than the victim, Melissa Pruett. As

---

[4]As discussed above in note 3, the relevant crimes for purposes of sentence enhancement are the conviction crimes, not the indicted crimes. Therefore, our analysis of the vehicular assault count of the indictment will focus on the conviction crime of reckless endangerment.

11

discussed above, the defendant's high speed flight from the police chief through the residential city streets of Covington created great potential for bodily injury to a victim. Chief Deverell faced great potential for bodily injury, as did the residents of the heavily populated street on which the chase took place. We believe, as we discussed above in the context of factor (10), that factor (16) should be applied given the evidence the defendant's conduct posed great potential for bodily injury to individuals other than the victim. Accord State v. Aaron Eckard, No. 01C01-9610-CC-00429, slip op. at 9 (Tenn. Crim. App., Nashville, Dec. 12, 1997); State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995).

As to Thies's convictions of DUI and driving on a revoked license, the record clearly establishes not only that he drove while intoxicated and while his driver's license was revoked, but also that he did so in a way which presented great potential for bodily injury to a victim. Factor (16) applies to these convictions.

**Mitigating Factor**

The state asks us to strip Thies of the benefit of the sole mitigating factor applied by the trial court, good work ethic and work history. We acknowledge that we have said, "Every citizen in this state is expected to have a stable work history if the economy permits the citizen to work, the citizen is not disabled, or the citizen is not independently wealthy." State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). In this case, however, the evidence demonstrates that the defendant not only has a stable work history, but also that he was prompt and did a "real good job." We believe a defendant whose performance has surpassed that which is expected of him is entitled to some measure of mitigation.

Our de novo review of the enhancement and mitigating factors yields six applicable enhancement factors and one relevant mitigating factor, with some of the enhancement factors applying to less than all of the convictions:

| Conviction | Applicable Enhancement Factors |
| --- | --- |
| Vehicular Homicide | (1), (8), (10), (13) |
| Reckless Endangerment | (1), (6), (8), (10), (13), (16) |

12

DUI, 3d offense      (1), (6), (8), (10), (13), (16)

Driving on Revoked License  (1), (6), (8), (10), (13), (16)

In weighing the enhancement factors against the mitigating factors, we find factors (1) and (8) deserving of great weight. The defendant, twice convicted of DUI, recently convicted of speeding, and without a driver's license, disregarded the rules of the road once again, this time with tragic results. We offset these heavily weighted factors and the other enhancement factors with the moderately weighted mitigating factor, and we find no error in the sentences imposed by the trial court, although we have followed a different path to that result.

For the felony conviction of vehicular homicide, the defendant, a Range I offender, faced 3 to 6 years for this Class C felony. Tenn. Code Ann. § 39-13-213 (1997); § 40-35-112 (1997). The trial court imposed a 4-1/2 year sentence for the vehicular homicide conviction, which is the mid-point of the 3 to 6 year range applicable to the defendant for that crime. We agree that the applicable factors support, at a minimum, a mid-range sentence.

With respect to the misdemeanor conviction of reckless endangerment, the defendant faced a sentence of up to 11 months and 29 days, with release eligibility between 0% and 75%. See Tenn. Code Ann. §§ 40-35-111(e)(1), 40-35-302(d) (1997). Applying factors (1) and (8) heavily, finding additional factors applicable to this conviction which were not available for the vehicular homicide conviction, and finding these factors heavily outweigh the sole mitigating factor, we find the maximum 11 month, 29 day sentence at 75% release eligibility appropriate for this defendant.

The driving on a revoked license conviction carried a sentence of up to six months, with a minimum of 2 days confinement. See Tenn. Code Ann. §§ 55-50-504(a)(1) (1993), 40-35-111 (1997). Again, this sentence deserves substantial

13

enhancement given the defendant's history of prior criminal conduct, and we find the fact that those prior offenses were committed behind the wheel of a motor vehicle particularly relevant to this crime. The trial court imposed a sentence of the maximum length of 6 months, with 75% release eligibility. Though reviewing the matter de novo, we find no error in the sentence imposed below.

Finally, on the third offense DUI conviction, Thies faced incarceration for up to 11 months and 29 days. See Tenn. Code Ann. § 40-35-302(d) (1997); State v. Palmer, 902 S.W.2d 391 (Tenn. 1995). The trial court imposed the maximum sentence but allowed the defendant 75% release eligibility. Certainly this defendant is deserving of a maximum sentence for this offense, given particularly enhancement factors (1) and (8). The defendant justly deserves no less than the sentence imposed by the trial court.

Accordingly, we find no error in the trial court's length of sentence determinations.

II

We turn next to the question of alternative sentencing. Again, we conduct a de novo review, unaccompanied by the presumption of correctness. The defendant, a Range I offender convicted of crimes of the Class C felony level and below, is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, he is eligible for probation. See Tenn. Code Ann. § 40-35-303(a) (1997).

We find Code section 40-35-103(1)(C) particularly applicable to the case at bar. From the facts of this case, it is patent that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(C) (1997). The defendant was on probation from his second DUI conviction when he chose to drive, unlicensed, while

14

under the influence of alcohol. The defendant was allowed leniency on his second DUI conviction, yet he disregarded the prosecutor's and the court's leniency with him and committed the same crime for a third time. He had also been convicted of speeding during this same probationary period, and excessive speed was involved in the fatal wreck that brings him before this court. Simply put, this defendant is one who, despite past leniency and opportunities for rehabilitation, has shown neither respect for the prior reprieves from incarceration nor efforts toward conforming his conduct to the dictates of the law. Having no regard for measures less restrictive than confinement, the defendant has through his own actions rebutted the presumption of his favorable candidacy for alternative sentencing.

There is no error in disallowing any form of alternative sentencing.

### III

In his last issue, the defendant complains that the trial court imposed his convictions in this case concurrently to one another but consecutively to the revoked second offense DUI conviction he was required to serve when his probation was revoked for that prior offense.[5] Thies argues that his having to serve time for the prior offense coupled with the consecutive sentences from this case is too harsh because it effectively punishes him twice for the same offense.[6]

Because we are reviewing the defendant's sentence de novo unaccompanied by the presumption of correctness, we observe that the defendant fits two of the consecutive sentencing categories. First, as found by the trial court,

---

[5]We perceive some of the defendant's argument to be directed to what he believes is injustice in the revocation of probation for the prior conviction. To the extent that the defendant complains about the revocation itself, that issue is beyond the scope of this appeal.

[6]The record reflects on the judgment forms that the DUI and vehicular homicide sentences were imposed consecutively to the prior DUI conviction; however, the sentencing order signed by the court and the court's comments in the transcript of the sentencing hearing reflect that only the vehicular homicide conviction was imposed consecutively to the prior DUI conviction.

the defendant committed this offense while on probation.[7] See Tenn. Code Ann. § 40-35-115(b)(6) (1997). That the defendant committed his crimes while on probation is not contested. Additionally, we find the defendant is a dangerous offender. See Tenn. Code Ann. § 40-35-115(b)(4) (1997). This defendant's conduct fits hand-in-glove with the statutory criteria of "behavior indicat[ing] little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). The evidence shows that the defendant operated a motor vehicle with a blood alcohol concentration well over the legal limit and without a valid driver's license, causing death and serious bodily injury. This took place less than eight months into his second probationary sentence for DUI, with the second offense having taken place just over two months into the first probationary sentence. Accord State v. Penelope R. Karnes, No. 01C01-9606-CR-00249, slip op. at 8-9 (Tenn. Crim. App., Nashville, May 21, 1997) (two previous DUI convictions and a previous driving on revoked license conviction); State v. Anthony Raymond Bell, No. 03C01-9503-CR-00070, slip op. at 7-8 (Tenn. Crim. App., Knoxville, Mar. 11, 1996) (second DUI offense committed while on probation from earlier DUI conviction), perm. app. denied (Tenn. 1996); State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995) (DUI offense only two months after previous DUI offense).

Further, we find that the aggregate sentence imposed reasonably relates to the severity of the offense, is necessary to protect the public from further criminal activity by the defendant, and is consistent with the principles of the

---

[7]There are two paths by which a defendant may receive consecutive sentencing for past and present convictions. Code section 40-35-310 empowers the trial court, upon revocation of a suspended sentence due to criminal conduct during a period of probation which has resulted in a conviction, to impose the revoked probationary sentence consecutively to the conviction arising from the defendant's conduct during the probationary period. Tenn. Code Ann. § 40-35-310 (1997). Further, upon sentencing a defendant for a conviction resulting from conduct occurring during a period of probation for a prior crime, the trial court may use the defendant's status as a probationer at the time of the crime as a basis for imposing consecutive sentencing. Tenn. Code Ann. § 40-35-115(b)(6) (1997). The proceeding before us is an appeal of sentencing, not revocation of probation. Thus, consecutive sentencing, if sustainable on the basis of the defendant's probationary status, must be based upon section 40-35-115(b)(6).

16

Sentencing Act. <u>Wilkerson</u>, 905 S.W.2d 933. A more lengthy sentence is appropriate for this defendant who has repeated the same unlawful conduct on multiple occasions and who took the life of a young woman and seriously injured another on his most recent repetition. The defendant also appears to have a problem with alcohol. He admitted to the presentence officer that he continued, even after committing these offenses, to drink the same amount of alcohol weekly that he has been drinking since age sixteen. The public needs to be protected from further criminal activity that may result from the defendant's abuse of alcohol. <u>Accord</u> <u>Anthony Raymond Bell</u>, slip op. at 8. His status as a repeat offender is illustrative of the fact that lesser terms of punishment have not served to curtail his conduct. Consecutive sentencing is consistent with the principles of the Sentencing Act. The defendant has been given the benefit of less lengthy and less restrictive terms of punishment in the past, yet he has failed to live within the bounds of the law. <u>See</u> Tenn. Code Ann. § 40-35-103(5) (1997) ("The potential or lack of potential for rehabilitation or treatment of defendant should be considered in determining the sentence alternative or length of a term to be imposed."). We find no error in the trial court's imposition of consecutive sentencing.

In summary, we find no reversible error and affirm the judgment of the trial court.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOE B. JONES, PRESIDING JUDGE

_____
JERRY L. SMITH, JUDGE

17