**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**APRIL SESSION, 1998**

FILED

September 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9705-CR-00166** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **POLK COUNTY** |
| **VS.** | ) | |
| | ) | **HON. MAYO MASHBURN** |
| **MICHAEL SCOTT FARNER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Delayed Appeal)** |

FOR THE APPELLANT:

JERRY H. SUMMERS
500 Lindsay Street
Chattanooga, TN 37402-1490

TIMOTHY W. JONES
Ogle & Wallace
Court Place, Suite 1
121 Court Avenue
Sevierville, TN 37862

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JERRY N. ESTES
District Attorney General

SHARI TAYLOE
Assistant District Attorney
P. O. Box 1351
Cleveland, TN 37364-1351

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On March 31, 1988, Appellant, Michael Scott Farner, pled guilty to second degree murder, assault with intent to commit first degree murder, and second degree burglary. After a sentencing hearing, Appellant was sentenced as a standard Range I offender to 35 years for the second degree murder conviction, 32 years for the assault with intent to commit murder, and 9 years for the second degree burglary. All sentences were ordered to run consecutively. Appellant waived his right to appeal, and Appellant's court-appointed counsel was relieved from further representation of Appellant. On May 29, 1992, Appellant filed a pro se Petition for a Writ of Habeas Corpus in the United States District Court for the Eastern District of Tennessee. Counsel and a Guardian Ad Litem were appointed. On September 25, 1996, Appellant's petition for Habeas Corpus was dismissed for failure to exhaust state remedies. On February 10, 1997, Appellant filed a motion for a delayed appeal to this Court. On May 28, 1997, this Court granted the motion for a delayed appeal. Appellant appeals from the trial court's imposition of an effective sentence of 72 years incarceration, raising two issues:

1) whether Appellant should receive less than the maximum sentence in the range upon conviction of an offense when no enhancing factors may be properly applied and where two mitigating factors should be applied; and
2) whether Appellant should be sentenced to concurrent prison terms when the record indicates that his confinement is not necessary for the protection of the public, when he may be amenable to rehabilitation, and when he cannot be properly labeled as a "dangerous offender".

After a review of the record, we affirm the judgment of the trial court.

# FACTS

Appellant in this case was 20 years old at the time of the offense. He suffers from both physical and mental handicaps in that since birth he has been unable to hear or speak. His intelligence level is only slightly above mental retardation, and he is functionally illiterate. Proof was presented in the pre-sentence report that, as a youth, Appellant suffered severe physical abuse at the hands of his grandparents.

On July 21, 1987, Appellant entered the home of Andrew and Agnes Danisewicz without permission. He forced Ms. Danisewicz into the bathroom with a hunting knife, where he then stabbed her four times. Mr. Danisewicz returned home and interrupted the attack upon Ms. Danisewicz; Appellant turned on Mr. Danisewicz, enabling Ms. Danisewicz to flee for help. Appellant stabbed Mr. Danisewicz 17 times, killing him.

After his arrest on July 22, 1987, Appellant gave a statement to the police through the means of an interpreter. Appellant stated that he was mad on the day of the murder, because his mother had made him leave home. He went to a pool hall, got two six-packs of beer, and drank all 12. He then went to the victims' home with the intent to kill them, because he felt that they always looked at him like they were mad at him.

Appellant was indicted for first degree murder, assault with intent to commit first degree murder, and second degree burglary. He pled to a reduced charge of second degree murder, and to the other charges.

## I. Length of Sentence

Appellant argues that the trial court erred in imposing the maximum sentence within the applicable ranges, contending that none of the statutory enhancement factors may properly be applied and that two mitigating factors should have been applied. Because both Appellant's crime and his trial occurred prior to the 1989 Sentencing Reform act, the 1982 sentencing act applies. Under the holding of State v. Poole, 845 S.W.2d 171 (Tenn. 1992) and Sills v. State, 884 S.W.2d 139 (Tenn. Crim. App. 1994), when a sentence is merely readjusted or when the individual components of the sentence are reviewed, but the sentence is not set aside on substantive or procedural flaw or due to a lack of jurisdiction, the same statute applies to the re-sentencing as did in the original sentence. Here, had Appellant's appeal not been an out of time appeal, the 1982 act would have applied. We see no reason to stray from the rule of State v. Poole.

When a defendant, convicted under the law applicable in this case, complains of his or her sentence, we must conduct a *de novo* review of the sentence. Tenn. Code Ann. § 40-35-401(d)(Supp. 1988)(*repealed by* Criminal Sentencing Reform Act of 1989, Acts 1989, ch 591, §6). This review is without a presumption of correctness. Tenn. Code Ann. § 40-35-401(d)(Supp. 1988)(*repealed by* Criminal Sentencing Reform Act of 1989, Acts 1989, ch 591, §6); State v. Boling, 806 S.W.2d 202 (Tenn. Crim. App. 1990).

The Sentencing Reform Act of 1982 established specific procedures which must be followed in sentencing. These procedures, codified at Tennessee Code

Annotated § 40-35-210 (1982)(*repealed by* Criminal Sentencing Reform Act of 1989, Acts 1989, ch 591, §6), mandated the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Tenn. Code Ann. § 40-35-210.

Under the 1982 Sentencing Act, there is no presumption that a defendant will be sentenced to the minimum sentence in the applicable range as there is under current law. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986). After determining the appropriate range for sentencing, the court was then to weigh the enhancing and mitigating factors found in Tennessee Code Annotated §§ 40-35-110 and 40-35-111 to arrive at a sentence which was "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4)(Supp. 1988)(*repealed by* Criminal Sentencing Reform Act of 1989, Acts 1989, ch 591, §6).

The 1982 Sentencing Reform Act also provided that the trial court shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any. These findings are crucial for appellate review of the trial court's decision. In the matter sub judice, the trial court found two mitigating

factors: under Tennessee Code Annotated § 40-35-110 (7), the defendant, because of his youth, lacked substantial judgment in committing the offense, and under Tennessee Code Annotated § 40-35-110(9) the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense. The trial court also found several enhancement factors, namely: under Tennessee Code Annotated § 40-35-111(1) that the defendant had a previous history of criminal behavior; under Tennessee Code Annotated § 40-35-111(3) the offense involved more than one victim; under Tennessee Code Annotated § 40-35-111(4) the victim was particularly vulnerable because of age or physical or mental disability; under Tennessee Code Annotated § 40-35-111(5) the defendant treated the victim with "almost unbelievable cruelty" during the commission of the offense; under Tennessee Code Annotated § 40-35-111(6) the injury inflicted upon the victims was particularly great; under Tennessee Code Annotated § 40-35-111(9) the defendant possessed and employed a deadly weapon in the commission of the offense; under Tennessee Code Annotated § 40-35-111(10) the defendant had no hesitation about committing a crime where the risk to human life was high. In its brief, the State concedes that Tennessee Code Annotated § 40-35-111(3) and (10) were misapplied to Appellant's sentence.[1]

[1] The State concedes that Tennessee Code Annotated § 40-35-111(10) does not apply to either the second degree murder conviction or to the assault with intent to commit second degree murder, but argues that it properly applies to the burglary conviction.

**Enhancement Factors**

In the matter sub judice, we find that the trial court correctly enhanced each sentence with respect to Tennessee Code Annotated § 40-35-111(1). The presentence report contains ample undisputed evidence of previous violence, drug abuse, and illegal destruction of property. All sentences were also appropriately enhanced with Tennessee Code Annotated § 40-35-111(9) since it is clear Appellant used a deadly weapon, i.e., a hunting knife to commit his crime. In addition the trial court properly enhanced all three sentences pursuant to Tennessee Code Annotated § 40-35-111(5). Appellant chose to attack Mr. and Mrs. Danisewicz in a particularly vicious manner, i.e., by using a knife to inflict multiple stab and slash wounds, rather than quickly accomplishing his grisly mission. Mrs. Danisewicz was stabbed four (4) times as she pleaded for her life and escaped only because Appellant turned his wrath onto Mr. Danisewicz wounding him seventeen (17) times eventually killing him as he too pleaded for his life. By his own admission, Appellant burgled the Danisewicz's home with his knife in hand for the exclusive purpose of killing the couple. Under these circumstances we have no trouble concluding that the victims were treated with exceptional cruelty. In addition to the above, we hold that the trial court properly applied Tennessee Code Annotated § 40-35-111(6) to Appellant's conviction for aggravated burglary. The injury to both Mr. and Mrs. Danisewicz during the burglary was very great. In addition as a result of her husband's death, Mr. Danisewicz lost considerable financial support. Application of this factor to the burglary sentence was appropriate.

Appellant's burglary sentence was also properly enhanced with Tennessee Code Annotated § 40-35-111(10), no hesitation about committing a crime where risk to human life is high.  Clearly a home invasion burglary for the express purpose of killing the occupants is such a crime.  See, State v. Edwards, 868 S.W.2d 682, 702 (Tenn. Crim. App. 1993).

However, there was some misapplication of enhancement factors.  The State concedes and we agree that Tennessee Code Annotated § 40-35-111(3), the crime involved more than one victim, does not apply to any of the convictions in this case.  See, State v. Clabo, 905 S.W.2d 197 (Tenn. Crim. App. 1995) (holding separate convictions with respect to each victim in a case precludes use of this aggravating factor).  The State also concedes and we agree that Tennessee Code Annotated § 40-35-111(10), no hesitation about committing a crime where risk to human life is high, was inapplicable to the murder and attempted murder convictions.  See, State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995); State v. Makoka, 885, S.W.2d 366 (Tenn. Crim. App. 1994).  Also the age of the victim without proof of special vulnerability as a result thereof is insufficient to warrant application of Tennessee Code Annotated § 40-35-111 (4). State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993)[2]

---

[2]Although State v. Adams deals with the Sentencing Reform Act of 1989, its reasoning should be equally applicable to the identical provision of the 1982 Act, i.e., it is particular vulnerability rather than age above which is the focus of § 40-35-111(4). Any other citations in this opinion to cases arising after the adoption of the 1989 Sentencing Act are made in the belief that such holdings are equally applicable to analogous provisions of the 1982 Sentencing Act.

**Mitigating Factors**

The State does not contest the applicability of mitigating factors found at Tennessee Code Annotated §§ 40-35-110(7) and (9). These factors deal respectively with a lack of judgment because of youth and reduced culpability due to a mental or physical conditions. The trial judge however, as was his prerogative gave little weight to these factors in view of the circumstances of Appellant's crime and the gravity of the numerous enhancement factors applicable in this case.

**Length of Sentence**

As stated earlier there is no presumptive minimum sentence with respect to sentences under the 1982 Sentencing Act. In this case which falls under the provisions of that act three (3) enhancement factors are applicable to the murder sentence, four (4) such factors are applicable to the assault with the intent to commit murder, and five (5) enhancers properly pertain to the burglary sentence. The trial court, within the scope of his discretion, gave little weight to the applicable mitigating factors. Under the circumstances we cannot say the length of the sentences imposed are improper.

## II. Consecutive Sentencing

Appellant contends that the trial court erred in imposing consecutive sentences, arguing that his confinement is not necessary for the protection of the

public, that he may be amenable to rehabilitation, and that he cannot properly be labeled as a "dangerous offender" or a "dangerous, mentally abnormal person." We disagree.

In Gray v. State, 538 S.W.2d 391 (Tenn. 1976), the Supreme Court set out criteria by which a defendant is evaluated in deciding whether consecutive sentencing is appropriate:

> Types of offenders for which consecutive sentencing should be reserved may be classified as follows: (1) the persistent offender, defined as one who has previously been convicted of two felonies or of one felony and two misdemeanors committed at different times when he was over eighteen (18) years of age; (2) the professional criminal, one who has knowingly devoted himself to criminal acts as a major source of livelihood or who has substantial income or resources not shown to be derived from a source other than criminal activity; (3) the multiple offender, one whose record of criminal activity is extensive; (4) the dangerous mentally abnormal person, so declared by a competent psychiatrist who concludes as a result of a presentence investigation that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior or by persistent aggressive behavior with heedless indifference to consequences; and (5) the dangerous offender, hereinafter defined.
>
> The prior record of the persistent offender will indicate that he is one not likely to be rehabilitated and should be incarcerated under consecutive sentences for the protection of the public. The same may be said for the professional criminal. The prior record of the multiple offender may have been good, but the crimes for which he has been convicted indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing. See Sentencing Alternatives and Procedures, § 3.4, Comment C; Model Penal Code, § 7.03. The object is to use consecutive sentencing, where appropriate, to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their anti-societal lifestyle.

> A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed. However, this does not preclude the trial court from imposing consecutive sentencing for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications.

Gray v. State, 538 S.W.2d 391, 393-394 (Tenn. 1976). In the matter sub judice, the trial court sentenced Appellant to consecutive sentences upon finding that Appellant was a dangerously mental abnormal person, but the record does not reflect any evaluation by a competent psychiatrist as required under Gray. However, based upon Appellant's past violent behavior documented in the presentence report, and his lack of hesitation in committing a home invasion with a view toward killing the occupants because of how he thought they looked at him, we believe that society must be protected from Appellant, and accordingly find that Appellant meets the criteria set out in Gray to be classified as a dangerous offender. The trial court's imposition of consecutive sentences is affirmed.

For the aforementioned reasons, the judgment of the trial court is affirmed.

-12-

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE

_____
CURWOOD WITT, JR., JUDGE